Roland KNOX, Petitioner–Appellant,

v.

Robert H. BUTLER, Sr., Warden, LSP, Respondent–Appellee.

No. 88–3520.

United States Court of Appeals, Fifth Circuit.

Oct. 3, 1989.

As Amended on Denial of Rehearing Nov. 21, 1989.

Robert J. Collins, Baton Rouge, La. (Court Appointed), for petitioner-appellant.

Dan J. Grady, III, Janice Kile, Asst. Dist. Atty., Baton Rouge, La., for respondent-appellee.

Before WISDOM, KING, and WILLIAMS, Circuit Judges.

WISDOM, Circuit Judge:

Roland Knox was sentenced to 35 years at hard labor for driving a getaway car in an armed robbery. He petitioned for a writ of habeas corpus on the ground that there was insufficient evidence to support his conviction. We decide that the substan-

tial agreement between accounts given by several witnesses would allow a reasonable finder of fact to believe the testimony favorable to the prosecution and to doubt the credibility of the testimony favorable to the defense. We therefore affirm the district court's decision and deny the writ.

## I

On the afternoon of March 3, 1976, an armed robber took between $500 and $550 in cash from the Tigertown Exxon Station in East Baton Rouge, Louisiana. Eyewitnesses saw a man matching the robber's description enter a car about a block from the station immediately after the robbery. One of those witnesses wrote down the license plate number of the car. An hour after the robbery, Knox drove that car into the Exxon Station to buy gas. He was arrested and charged as a principal in the armed robbery.

Knox admitted to having picked up an acquaintance, Winfield Tucker, near the station. Tucker was charged with the robbery. One witness said at a lineup that she thought Tucker was the robber, but she was not certain.[1] On January 31, 1977, the charges against Tucker were dropped for lack of probable cause to hold him for trial.

The charges against Knox were also dropped at that time for lack of probable cause.

Several months later, charges were pressed again. Tucker fled the jurisdiction while released on bail. He has not been tried. On April 14, 1978, after a bench trial, Knox was convicted under La.Rev. Stat.Ann. § 14:64 as a principal in an armed robbery. He was sentenced on June 5, 1978. After exhausting his direct appeals, he petitions for habeas relief.[2] Knox's habeas petition disputes the sufficiency of the evidence offered to prove both his participation in the armed robbery and his specific intent to commit the crime.[3]

## II

Jackson v. Virginia requires that we find the evidence sufficient to convict Knox if we conclude, "after viewing the evidence in the light most favorable to the prosecution, [that] *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[4] In a federal habeas corpus proceeding, we must defer to the factual findings in the state court proceedings.[5] We must respect the ability of the fact-finder to evaluate the credibility of witnesses.[6] When we apply

---

1. The parties dispute whether this identification establishes that Tucker was the robber. As we note in the text, Tucker was never tried. Alone, the equivocal identification of Tucker would not constitute sufficient evidence to convict Knox, who admits to driving Tucker.

2. Knox's direct appeals were exhausted on December 1, 1982. *See State v. Knox,* 370 So.2d 886 (La.1979) (remanding case on unrelated ground); *State v. Knox,* 422 So.2d 1164 (La. 1982) (table) (affirming conviction after remand). Knox filed his petition for habeas corpus relief on July 25, 1985. The state trial court denied the petition on August 2, 1985 as did the Louisiana Supreme Court on October 10, 1986. *See Knox v. Blackburn,* 494 So.2d 1171 (La. 1986) (mem.). Knox filed his petition in federal court on January 21, 1987. On September 10, 1987, a federal magistrate found that the evidence was insufficient and recommended that the petition be granted. *See Knox v. Blackburn,* 87–47–B (Mag. Rpt.). The district court held a hearing on December 8, 1987. It denied the petition on July 12, 1988. *See Knox v. Blackburn,* 87–47–B (M.D. La.). Knox appealed, and the district court granted a Certificate of Probable Cause.

3. In 1978, when Knox was tried, specific intent was an element of armed robbery under La.Rev. Stat.Ann. § 14:64 (West 1981). *See State v. Johnson,* 368 So.2d 719 (La.1979). Subsequently, the 1983 amendments to § 14.64 removed the specific intent element from the statutory definition of armed robbery. *See State v. Gordon,* 504 So.2d 1135, 1142 n. 4 (La.App. 5 Cir. 1987).

4. 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979) (emphasis in original).

5. *See* 28 U.S.C. § 2254(d) (1988) (requiring that federal courts in habeas proceedings accord a presumption of correctness to factual findings of state courts unless one or more of seven enumerated exceptions applies or the state-court finding is not fairly supported by the record); *Sumner v. Mata,* 455 U.S. 591, 592–93, 102 S.Ct. 1303, 1304–05, 71 L.Ed.2d 480, 483–84 (1982) (per curiam).

6. *See Sumner,* 455 U.S. at 597, 102 S.Ct. at 1306, 71 L.Ed.2d at 486 (habeas court must defer to

the *Jackson* standard to the record of this case as a whole, we find that the witnesses are in such substantial agreement that certain minor discrepancies that Knox points to do not justify vacating the conviction.[7]

## A. *The Testimony*

■ The State based its case against Knox on the testimony of four witnesses: the cashier at the Exxon station, another employee of the station, a man working near the station, and an investigating officer.

Ruby Ross was the cashier. She testified that, as she returned to her booth after checking the sales on the pumps, a young black man coming from the direction of Texas Street approached her and asked for change for a dollar. As she opened the door to the booth, she testified, he pushed her inside the door, pulled a .32 automatic, and demanded money. She handed him a bank deposit bag. According to Ross's testimony, the robber then searched through several other bags, took the money, and

proceeded out the door and toward Texas Street. She did not see him after he left the station. She did not know whether he escaped on foot or by car. Ross described the robber as "a young black man" with a "little small mustache". She testified that he was "wearing a cap with a half-moon bib" and a blue jean jacket and pants. She did not recall the material of the cap, the color of his shirt, or whether he wore glasses.

Ross's description of the robbery was consistent with that given by Phillip James, another employee of the station. When the robbery occurred, James was talking on a telephone behind the station. He could see along East Roosevelt Street to Texas Street. He noticed a man get out of a "green Chevrolet" at the corner of Texas and East Roosevelt. Only the driver remained in the car. The car "went around the corner somewhere." The man who left the car approached the phone, then walked toward the cashier's booth. James saw the gun and the robbery, but he did not describe the robbery in detail. During the robbery, a customer interrupted James's

state court on questions involving credibility of witnesses); *United States v. Bell,* 812 F.2d 188, 193 n. 5 (5th Cir.1987) (habeas court may disregard fact-finder's belief in testimony only if the testimony defies physical laws).

7. A preliminary issue is raised regarding the admissibility of evidence. Knox seeks to introduce in the federal courts two exhibits that were not presented in the state courts: a diagram of the scene of the crime, and census data establishing that many young black men lived in the area. His request arguably runs afoul of two prohibitions. First, on habeas review, federal courts must respect the autonomy of state courts by requiring that petitioners advance in state court all grounds for relief, as well as all factual allegations supporting those grounds. This rule extends to the evidence establishing the factual allegations themselves. *See* 28 U.S.C. § 2254(b) (exhaustion of state remedies required); *Dispensa v. Lynaugh,* 847 F.2d 211, 217 (5th Cir.1988). Second, *Jackson* itself speaks of habeas review based on "the record evidence adduced at the trial". 443 U.S. at 324, 99 S.Ct. at 2792, 61 L.Ed.2d at 576.

We nevertheless admit the exhibits. The diagram submitted here merely replaces a diagram

drawn by the prosecutor at Knox's trial. The earlier diagram was apparently lost. The State does not dispute the present diagram's accuracy.

In the light of those two prohibitions, we will admit the diagram of the scene of the crime, but will not admit the census data. The diagram submitted here merely replaces a diagram drawn by the prosecutor at Knox's trial. The earlier diagram was, apparently, lost. The state does not dispute the present diagram's accuracy. Thus, admitting the diagram on habeas review amounts to no more than reviewing the evidence that was presented at trial.

The census data presents a more difficult problem. It is true that judicial notice of census data may properly be taken on habeas review. *See Barber v. Ponte,* 772 F.2d 982, 998 (1st Cir.1985) (en banc) (taking judicial notice of census data in habeas case), *cert. denied,* 475 U.S. 1050, 106 S.Ct. 1272, 89 L.Ed. 580 (1986). It is, further, true that Fed.R.Ev. 201 authorizes judicial notice of exhibits at any time during trial or appeal. Nevertheless, in the present case, there was no reason for the request for judicial notice to have come only at the point of appellate habeas review. In the circumstances of this case, we decline to add to the record through judicial notice evidence that was never presented to the district court.

telephone conversation, asked him for change, and called the police. By that time, James testified, the robber had run back past the telephone and jumped into the same green Chevrolet, which was parked on Texas Street. According to James's testimony, the car then sped away north on Texas. James did not identify the driver of the Chevrolet. James testified that the robber was wearing blue jean pants, a blue denim jacket with the sleeves cut off, "black shades", and a brown bibbed hat.

William Thomas Flynn, an employee of South Central Bell Telephone, gave testimony central to the state's case. Flynn was repairing a telephone at the southeast corner of Texas Street and East Roosevelt Street at the time the robbery occurred. A "green—a light green Chevrolet", pulled up alongside him. Only the driver, a young black man, was in the car. Flynn did not identify the driver as Knox. Knox, however, admitted he was the driver. The car was on East Roosevelt, pointed east. Flynn testified that the car waited for "no more than may be four or five minutes, at the most," until another young black man came "running" down East Roosevelt Street from the direction of the station. According to Flynn's testimony, that man "threw ... a bag or something" onto the seat of the car, "got in the car, and said, 'Let's go'—or something like that—'Get it' —and that's when the tires started spinning and it took off." Flynn told a co-worker, "Man, something's wrong." He wrote down the license plate number on the top of the telephone box he was repairing. A few minutes later Flynn saw police officers at the station. He told them what he had seen, and they copied the license number. It was the license number of the car Knox was driving an hour later when he was arrested. Under cross-examination, Flynn admitted that the Chevrolet "maybe" could have waited next to him for only one minute but said, "I don't believe it was one minute." He was certain that the car left heading east along East Roosevelt Street. Flynn said that the man he saw running along East Roosevelt "had on a pair of blue jeans and a blue jean number [jacket] and

it looked like a blue jean engineer's cap— and sunglasses on."

In most respects, Flynn's testimony was consistent with the accounts given by Ross and James. Ross and James saw the robber flee east along East Roosevelt; Flynn saw a man running along East Roosevelt from the direction of the Exxon Station. James saw the robber climb into a "green Chevrolet"; Flynn described the car he saw as "green—light green".

There are some minor discrepancies between the accounts. James saw a brown cap; Flynn was adamant that it was a blue jean cap. James said the sleeves of the jacket had been cut off; Flynn did not mention this. Ross, whose description in other respects matched Flynn's, did not remember the sunglasses. But these discrepancies are remarkably small for three separate accounts of such an event.

There is, however, one major inconsistency in the testimony of the witnesses. Flynn asserted that he saw the car head east on East Roosevelt, but James insisted that the getaway car travelled north on Texas. Knox contends that James's testimony is the most credible available and that it undermines the credibility of Flynn's testimony.

Knox's own account of the interaction Flynn witnessed depicts it as innocent chance meeting of two acquaintances. Knox testified that he had borrowed his sister's car for a job interview. The interviewer confirmed that Knox attended the interview. Knox then drove around for several hours, according to his testimony. At the time of the robbery, Knox said, he was alone in the car, driving down Texas Street to visit a friend who lived in apartments on the corner of East Roosevelt Street and Texas Street. He testified that he saw Tucker "running"; he did not say whether Tucker was on East Roosevelt Street or Texas Street. Knox described the incident as follows:

> [T]he dude whistled at me and I stopped, you know—playing the radio—I stopped, just—I wasn't going to back up in the middle of Texas Street, so I just sat

there and waited for him until he caught up. He was running, and he told me, he said, "Give me a ride." I know him. Well, I—you know, I won't deny him the ride. So I gave him—he said he'd give me—"I'll give you twenty dollars to take me on Florida Street." I said, "How far down Florida are you going?" He said, "By Globe's." So I took him there, you know.

When Knox was arrested, he had $20. According to Knox, Flynn saw an innocuous, unplanned meeting between himself and Tucker.

The insufficient-evidence claim raised by Knox in his habeas petition reduces to an argument about credibility: whether the finder of fact should have given the testimony of Knox and of James more weight than it gave to Flynn's account.

### B. *The Credibility of James's Testimony*

Some of the objective facts of this case provide reason to believe James. He saw the robber arrive, commit the robbery, and leave. Nonetheless, there is good reason to doubt the credibility of James's testimony as to the direction in which the getaway car departed. As the district attorney said before the district court,

> [h]is chronology was very confused. More importantly, at the time when he saw the robber leaving that service station he's on the telephone ... talking to his momma. And he sees that robber coming around at about the same time he's telling his momma that he thinks a robbery is going on. Somebody else comes running around the back and wants him to get off the phone, and hand them a nickel ... so that they could make a phone call to the police.

Any or all of those things could have distracted James's attention as the robber ran away and then departed in the car. Hence, a reasonable finder of fact could prefer Flynn's account regarding the direction in which the car departed. The direction of the car's departure is the one area of significant discrepancy between Flynn's and James's accounts.

### C. *The Credibility of Knox's Testimony*

The credibility of Knox's testimony is undermined by the fact that Knox was self-interested. In addition, Knox's credibility is at least partly impeached by his criminal record.

Knox's explanation for his picking up Tucker contradicted Flynn's account on two points. First, Knox asserted that Tucker did not throw anything into the car as he climbed into it. By contrast, Flynn saw Tucker toss "a bag or something". Second, Knox testified that Tucker asked for a ride, that Tucker promised him $20, and that he asked Tucker's destination, heard it, and then said he had to hurry to pick up his sister. Knox did not say whether Tucker got into the car before, during, or after this conversation. The colloquy certainly took longer than the hurried "Let's Go" or "Get it" Flynn testified he heard. The absence of conversation in Flynn's account suggests that a rational fact-finder could infer that the driver and passenger had cooperated previously and did not need to talk. The speed of their departure might reasonably intimate that they knew their collaboration was not innocent. These circumstances could lead a reasonable fact-finder to reject Knox's contention that he did not know a robbery had taken place.

Two other facts also undermine Knox's story. Tucker paid him $20 for the ride, Knox testified. When arrested, Knox had $20 in his possession. Twenty dollars would seem excessive as payment for a simple favor.

Second, the State alleged that Knox attempted to hide $73 in a patrol car. After his arrest, Knox was left unattended in the back seat of the police car for several minutes. At 7:00 the next morning, about sixteen hours later, Officer Frank Washington of the Baton Rouge Police Department found $73 in assorted bills "under the back seat on the ... passenger side" of that same patrol car. Knox had been the only person transported in the car. It had not been used after the shift in which Knox had been arrested. It was common practice to search cars at the start of each

shift.[8] A reasonable fact finder could have doubted Knox's contention that he knew nothing about the $73.[9]

Knox points to several facts supporting his account. He parked right next to Flynn, with the car radio blaring. He argues that he would hardly have called attention to himself in that way if he were in the middle of a robbery. We note that it is possible that he did not see Flynn. It is also possible that Knox did not consider his behavior, sitting in a car with the radio playing loudly, unusual enough to attract attention, much less suspicion.

Knox also points out that, an hour after the robbery, he went to Tigertown Exxon to buy gas. He would not have done so, he contends, if he were guilty. But Knox had no reason to suppose that anyone in the station had seen him, or that Flynn had taken notice of him. Therefore, Knox would not have supposed that he had any reason to avoid the station.

As Knox points out, it is conceivable that there were two green Chevrolets on the corner at the time in question. Such cars were, apparently, not uncommon in the area. In fact, police officers detained and then released the driver of another green Chevrolet in the area shortly after the robbery was reported. Nevertheless, none of the points raised by Knox reinforce his testimony sufficiently to persuade us that a rational fact-finder would have to have found his testimony more credible than that of the other witnesses.

### D. The Credibility of Flynn's Testimony

Flynn acknowledged that he did not see the robbery but, rather, only the escape. The heart of Flynn's testimony was that he thought he had seen something suspicious; this impression prompted him to write down the license plate number of Knox's car. The trial judge in this bench trial had to decide, after seeing and hearing Flynn on the stand, whether Flynn was the sort of person whose impressions and inferences were likely to be reasonable. Such character determinations cannot be replicated by appellate courts relying on cold records.

The finder of fact had to decide which testimony to believe in this case. The need to choose between conflicting testimony did not require, as Knox suggests, that the fact-finder believe something that was physically impossible.[10] Rather, the finder of fact was called upon to determine the credibility of witnesses. It was not unreasonable for the fact-finder to give substantial weight to Flynn's testimony.

### E. The Finding of Guilt Beyond a Reasonable Doubt

Several facts suggest that Flynn did indeed see the end of the robbery and not, as Knox suggests, simply an offer of a ride. Flynn's description of the man he saw running matches the description of the robber given by Ross and James. Flynn was standing where the other witnesses said the robber was heading. It is not unreasonable to infer that the robber was the only young black man dressed in blue jeans, a jean jacket, and a bibbed cap who ran down East Roosevelt Street toward Texas Street and jumped into a green Chevrolet at the time in question. In view of the agreement among the witnesses on most of the facts, the credibility of Flynn, and the reasons to doubt parts of the testimony of James and Knox, we hold that a

---

**8.** The magistrate emphasized that Officer Washington did not have personal knowledge that the car had been searched at the start of the shift before Knox was placed in the car. *See Knox v. Blackburn,* 87–47–B (Mag.Rpt. Sep. 10, 1987) at 9. The practice of searching patrol vehicles protects officers by ensuring that no weapons will be available to suspects placed in patrol cars. It may also uncover evidence, as it did here. It is reasonable to believe that a practice with such benefits is likely to be followed.

**9.** Knox notes that no money was found when he was searched before being placed in the patrol car. An officer at his arrest, Ron Rucker, testified that the frisk was simply for weapons. According to Officer Rucker, "[h]e could have had money and you wouldn't have" found it.

**10.** Testimony "so unbelievable on its face that it defies physical laws" would be "incredible as a matter of law". *United States v. McKenzie,* 768 F.2d 602, 605 (5th Cir.1985), *cert. denied,* 474 U.S. 1086, 106 S.Ct. 861, 88 L.Ed.2d 900 (1986).

rational finder of fact could have found Knox guilty beyond a reasonable doubt.

## III

■ Knox argues that the sufficiency of the evidence against him must be tested against a state law standard higher than the reasonable-doubt standard set by federal law.[11] He contends that Louisiana courts forbid convictions based on circumstantial evidence unless that evidence excludes every reasonable hypothesis of innocence.[12] We are not persuaded that Louisiana law truly imposes a higher standard of proof.[13] We need not enter this dispute, however. The evidence against Knox meets even the higher standard.[14]

Knox's hypothesis provides an innocent explanation for each piece of evidence against him only if it is augmented by numerous ad hoc premises. If Knox's explanation of his picking up Tucker were true, then James's testimony that the robber came and left in the same car would have to be false or, alternatively, there would have to have been a robber other than Tucker who came and left from the same corner and at the same time as Tucker in a green Chevrolet other than that driven by Knox. In addition, if Tucker were not the robber, we would be left to wonder why Flynn recalls Tucker throwing a bag into the back seat (which Knox does not recall), and why Tucker offered Knox the rather high payment of $20 for a simple ride across town. Several other pieces of evidence, such as Flynn's testimony that there was virtually no conversation between Knox and Tucker when Tucker entered Knox's car, are left unexplained by Knox. In short, Knox's explanation does not present a "reasonable hypothesis of innocence" such as might require his acquittal under Louisiana law.

## IV

The combined testimony of the witnesses in this case provides ample basis for a rational finder of fact to conclude beyond a reasonable doubt that Roland Knox knowingly drove the getaway car in the robbery of Tigertown Exxon. Knox has not presented a "reasonable hypothesis of innocence" such as might require his acquittal under Louisiana law. The decision of the district court denying the writ is AFFIRMED.

**11.** The federal, reasonable-doubt standard is articulated in *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

**12.** Knox refers here to La.Rev.Stat.Ann. § 15:438 (West 1981) which states that "[t]he rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence."

**13.** *Compare State v. Williams,* 423 So.2d 1048, 1052 (La.1982) (holding that La.Rev.Stat.Ann. § 15:438 (West 1981) sets standard above federal law) *with State v. Chism,* 436 So.2d 464, 468 n. 3 (La.1983) (describing *Williams* as dicta and suggesting that the Louisiana standard is coextensive with the *Jackson* standard). *See also,* Joseph, Postconviction Procedure, 44 La.L.Rev. 477, 478–81 (1983) (discussing whether Louisiana's standard of proof in cases involving circumstantial evidence is higher than the federal, *Jackson* standard).

**14.** There is also a question as to whether this court's duty to enforce the due process clause of the U.S. Constitution would encompass a duty to police Louisiana's application of its own standards of proof in criminal cases. *Compare, e.g., Holloway v. McElroy,* 632 F.2d 605, 640 n. 55 (5th Cir.1980) (stating that "a plausible argument could be made that the state would be denying a defendant of the process due him under state law were it to obtain a conviction that was based entirely on circumstantial evidence which did not meet [the] more rigorous [state] standard [for cases involving such evidence]. It is unclear to what degree such state law protections [as raised standards of proof for circumstantial evidence] should be incorporated into the federal courts' review...."), *cert. denied,* 451 U.S. 1028, 101 S.Ct. 3019, 69 L.Ed.2d 398 (1981), *with Jones v. Butler,* 864 F.2d 348, 361 (5th Cir.1988) (stating that "[w]hatever the state law requires, ... the federal courts' habeas review is limited to ensuring that *Jackson* is satisfied."), *cert. denied,* ___ U.S. ___, 109 S.Ct. 2090, 104 L.Ed.2d 653 (1989).