**Leonard DOWELL**

v.

**C.M. LENSING, et al.**

**Civ. A. No. 90–1230–A.**

United States District Court,
M.D. Louisiana.

Oct. 19, 1992.

---

**20.** *See generally* pp. 1327–1328, *supra*.

Eulis Simien, Jr., Baton Rouge, La., for plaintiff.

Doug Moreau, Dist. Atty., William H. Cooper, III, Asst. Dist. Atty., Baton Rouge, for defendant.

## RULING ON APPLICATION FOR WRIT OF HABEAS CORPUS

### JOHN V. PARKER, Chief Judge.

This matter is before the court upon petitioner's application for habeas corpus. The report and recommendation of United States Magistrate Christine A. Noland, dated August 21, 1992, recommends that the application be granted in part and denied in part. Dowell moved for expedited consideration of the report, stating that the State would not be filing any objections to the report. Upon preliminary review, the court instructed the parties to file supplemental briefs addressing certain issues relating to the habitual offender adjudication. The court has now conducted a thorough review of the report and carefully considered the petition, the record, the tapes from the evidentiary hearing held below and the law applicable to this action.

On May 19, 1981, Dowell was convicted of simple burglary in the Nineteenth Judicial District Court for the Parish of East Baton Rouge, Louisiana. He was adjudged an habitual offender based upon a 1977 guilty plea to felony theft in the Fifteenth Judicial District Court in Lafayette, Louisiana. Dowell asserts numerous arguments in support of his application for writ of habeas corpus under 28 U.S.C. § 2254 that have been thoroughly addressed by the magistrate judge in her report. However, the court finds that one of those arguments deserves further consideration.

■ Dowell contends that his 1977 guilty plea was not made knowingly and voluntarily because he was informed that he was entitled to a six-member jury and that at least five jurors would have to agree as to his guilt in order to convict. While that was a correct statement as to the law at the time of his plea, the Supreme Court held two years later that the concurrence of six jurors is constitutionally required to preserve the substance of the jury trial

right and to assure the reliability of the verdict. *Burch v. Louisiana*, 441 U.S. 130, 99 S.Ct. 1623, 60 L.Ed.2d 96 (1979).

■ Dowell contends that *Burch* should be applied retroactively and that his plea was invalid because he was not properly informed as to his right to a trial by jury. At the evidentiary hearing held by the magistrate judge, Dowell testified that he had "no chance" if the State only had to convince five jurors but he would not have pled guilty had he known that the verdict had to be a unanimous verdict of six.

In her report, the magistrate judge discusses at length whether *Burch* should be applied retroactively to invalidate the 1977 plea. Essentially, the magistrate judge concludes that *Burch* should be applied retroactively based upon *Thomas v. Blackburn*, 623 F.2d 383 (5th Cir.1980) cert. denied, 450 U.S. 953, 101 S.Ct. 1413, 67 L.Ed.2d 380 (1981). In *Thomas*, the Fifth Circuit considered retroactive application of the Supreme Court's related decision in *Ballew v. Georgia* [1], which found the use of a five-person jury to be unconstitutional. The Fifth Circuit concluded that *Ballew* must be applied retroactively, not only to cases pending on direct appeal, but to convictions obtained by five-person juries that had become final prior to the Supreme Court's decision in *Ballew*.

Recognizing that Dowell was not actually convicted by five jurors, the magistrate judge additionally relies on a per curiam opinion, *Smith v. Blackburn*, 632 F.2d 1194 (5th Cir.1980), as authority for finding that Dowell did not validly waive his right to a jury trial when he pled guilty. In *Smith*, the petitioner elected to be tried by a five-person jury. Relying on *Thomas* and *Ballew*, the court reversed and remanded for the issuance of a writ of habeas corpus. However, the court observed that the petitioner did not intentionally waive a known right or privilege:

"In fact, petitioner was forced to choose between what were to become two unconstitutional choices: a five-member jury, held unconstitutional in *Ballew*, or

---

1. 435 U.S. 223, 98 S.Ct. 1029, 55 L.Ed.2d 234 (1978).

a six-member jury where the concurrence of five members could support a conviction, also held unconstitutional in *Burch v. Louisiana ...*" *Smith,* at page 1195.

In this case, the magistrate judge concludes that Dowell did not intelligently waive his right because he was "forced to choose" between a jury where five members could convict and pleading guilty. If Dowell had been convicted by five jurors, the court might well agree with the magistrate judge. Instead, however, Dowell chose to plead guilty after being informed that he was entitled to a jury trial where five out of six jurors would have to agree in order to convict. The court finds that there is a fundamental difference between being convicted by five jurors as opposed to pleading guilty after being instructed in accordance with the current law that a verdict of five jurors would be sufficient to convict.

■ As a general rule, when a judgment of conviction is based upon a voluntary and intelligent guilty plea made upon advice of competent counsel, it is not subject to collateral attack. *United States v. Broce,* 488 U.S. 563, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989). There is no serious question that Dowell's decision to plead guilty in 1977 was voluntarily and intelligently made upon advice of competent counsel. "[A]bsent misrepresentation or other impermissible conduct by state agents, a voluntary plea of guilty made in light of the then existing law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise." *Broce,* at page 764, quoting *Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970).

In *Brady,* the petitioner pleaded guilty to kidnapping, a federal offense under then 18 U.S.C. § 1201(a). Nine years after the plea, the Supreme Court ruled in *United States v. Jackson*[2] that § 1201(a) was unconstitutional because it permitted imposition of the death sentence only upon a jury's recommendation, thereby making the risk of death the price of a jury trial. The court found that the death penalty provi-

sion imposed "an impermissible burden" upon the exercise of the Sixth Amendment right to demand a jury trial.

Brady argued that *Jackson* required the invalidation of every plea of guilty entered under § 1201(a), at least when the fear of death was shown to have been a factor in the plea. The Supreme Court rejected his argument, finding that the plea was voluntary and intelligent, i.e. with sufficient awareness of the relevant circumstances and likely consequences.

In examining all of the surrounding circumstances, including the strength of the government's case against him, the court considered the possibility that Brady decided to plead guilty rather than elect a jury trial which could have resulted in a death penalty. The court nevertheless found that even if the death penalty provision caused the plea that this did not necessarily prove that the plea was involuntary. There was nothing to indicate that Brady "was so gripped by fear of the death penalty or hope of leniency that he did not or could not, with the help of counsel, rationally weigh the advantages of going to trial against the advantages of pleading guilty." 397 U.S. at 750, 90 S.Ct. at 1470.

■ The court further found that the plea was intelligently made despite the fact that the death penalty provision was struck down nine years later. A plea is not vulnerable to attack merely because the defendant later discovers that he misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action. In short, the court found no reason to doubt that Brady's solemn admission of guilt was anything but truthful.

In *Morse v. State of Texas,* 691 F.2d 770 (5th Cir.1982), the petitioner challenged a mandatory life sentence for a 1974 conviction of aggravated robbery as enhanced by two prior felony convictions. Morse argued that his sentence was unconstitutionally enhanced by using a 1963 guilty-plea conviction which was motivated by his fear that a 1959 guilty-plea conviction would

**2.** 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968).

have otherwise been used to enhance the 1963 conviction. The 1959 conviction was obtained without assistance of counsel and was vacated after the 1963 plea under *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). Consequently, Morse argued that the 1963 plea was motivated by the unconstitutional 1959 conviction and the 1963 plea could not be a valid basis for enhancing his 1974 conviction.

The Fifth Circuit cited *Brady* as being dispositive of the issue. The court observed that the 1963 plea was made knowingly and voluntarily in light of the then applicable law, while represented and advised by competent counsel. Morse balanced the benefits to be gained by plea negotiations against the inherent dangers in going to trial. The court refused to upset this "balancing calculus" in the absence of exceptional circumstances indicating a substantial likelihood that Morse had been induced to falsely condemn himself. Thus, the court found that the 1963 guilty-plea conviction was valid and was properly used for enhancement purposes in 1974.

The argument made by Dowell is noticeably similar to those made in *Brady* and *Morse*. Even if the court accepts his testimony that he would not had pled guilty if he had known that the State had to convince all six jurors of his guilt, this relates to his assessment of the strength of the State's case and is just one factor he considered in the "balancing calculus." There are no exceptional circumstances to indicate that Dowell falsely admitted his guilt. His plea was made knowingly and voluntarily in light of the then applicable law. His plea does not become vulnerable simply because later judicial decisions indicate the plea rested on a faulty premise or because hindsight indicates that he miscalculated the strength of the State's case.

Accordingly, the court rejects those portions of the report of the magistrate judge recommending that the petition for habeas corpus be granted in part, for the above stated reasons. However, the court approves and adopts the report and recommendations in all other respects and the application for habeas corpus relief is hereby DENIED.

## MAGISTRATE JUDGE'S REPORT

### August 21, 1992

NOLAND, United States Magistrate Judge.

This matter comes before the Court on the petitioner's application for a writ of habeas corpus under 28 U.S.C. § 2254. Petitioner Leonard Dowell challenges his conviction for simple burglary, a violation of La.R.S. 14:62, his adjudication as an habitual offender, and his twelve-year sentence, contending:

(1) that his conviction was unconstitutionally obtained because the placing of the Sheriff and the state District Attorney in the State's judicial branch violates the federal constitutional doctrine of separation of powers, such that these state officers have no lawful authority to investigate or prosecute criminal matters;

(2) that the bill of information failed to give adequate due process notice to enable Dowell to present a defense and failed to provide a sufficient basis to allow the defendant to plead double jeopardy and, further, that the state trial court did not have jurisdiction due to alleged defects in the bill of information;

(3) that the evidence was insufficient to sustain his conviction for simple burglary;

(4) that the jury was not charged or was charged inadequately with respect to reasonable doubt, circumstantial evidence, the essential elements of the offense, the presumption of innocence, the defendant's right to not testify, the law of principals and the responsive verdict of attempted simple burglary;

(5) that he was identified by the victim through an unconstitutionally suggestive procedure;

(6) that his adjudication as a habitual offender was based on an invalid predicate felony because his plea to that

predicate felony allegedly was not obtained constitutionally;

(7) that he received ineffective assistance of counsel, due to defense counsel's alleged:

 (a) failure to secure his release on bond so that he could retain a private lawyer and assist in preparing and investigating his defense;

 (b) failure to object to alleged defects in the bill of information, to request a bill of particulars, or to file a discovery request;

 (c) failure to file a motion to suppress the jackets owned by petitioner that were found at the crime scene;

 (d) failure to move to suppress statements made by petitioner to the victim;

 (e) failure to meet with petitioner and investigate and prepare for trial;

 (f) failure to investigate the crime scene;

 (g) failure to subpoena and call Willie Jones as a witness;

 (h) failure to subpoena and call attorney Ray Simmons and to adduce evidence regarding prison telephone call log books that allegedly would have supported the petitioner's claim that he did not place a call to the victim after the crime;

 (i) failure to impeach the testimony of the victim with his allegedly contradictory testimony at the preliminary examination;

 (j) failure to permit petitioner to testify in his own defense;

 (k) failure to request a jury charge on the "anything of value" element of simple burglary;

 (*l*) failure to object at the habitual offender hearing to the introduction of evidence of the predicate felony and failure to inform petitioner of his right to remain silent at the hearing and to be tried as to the truth of the allegations of the habitual offender petition; and

 (m) failure to take an effective and meaningful appeal; and, further,

(8) that his twelve-year sentence was excessive.

This Magistrate Judge's Report follows upon an evidentiary hearing held in this matter beginning on March 17, 1992 and completed, following a continuance for additional testimony, on March 25, 1992. The Court previously has held that the claims presented herein have been exhausted, with the exception of a claim that defense counsel was ineffective for failing to obtain the initial offense report prepared by the investigating officer. Petitioner has amended his petition to delete this claim, such that all claims presently presented in the petition have been exhausted.

### Separation of Powers (Claim One)

 Dowell first urges that his conviction was unconstitutionally obtained because placing the Sheriff and the District Attorney in the State's judicial branch violates the federal constitutional doctrine of separation of powers, such that these state officers have no lawful authority to investigate or prosecute criminal matters. This claim clearly lacks merit, however, as the federal constitutional doctrine of separation of powers is not enforceable against the States. *See Whalen v. United States,* 445 U.S. 684, 689 n. 4, 100 S.Ct. 1432, 1436 n. 4, 63 L.Ed.2d 715 (1980); *Shelton v. City of College Station,* 780 F.2d 475, 481 n. 2 (5th Cir.) (*en banc*), *cert. denied,* 477 U.S. 905, 106 S.Ct. 3276, 91 L.Ed.2d 566 (1986); *Attwell v. Nichols,* 608 F.2d 228, 230 (5th Cir.), *cert. denied,* 446 U.S. 955, 100 S.Ct. 2924, 64 L.Ed.2d 813 (1980) ("This contention presents no federal question."); *accord Risser v. Thompson,* 930 F.2d 549, 551–53 (7th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 180, 116 L.Ed.2d 142 (1991); *Ware v. Gagnon,* 659 F.2d 809, 812 (7th Cir.1981) (contention dismissed as frivolous in habeas action).

### Alleged Defects in the Bill of Information (Claim Two)

 It is settled law in the Fifth Circuit that the sufficiency of a state court indictment or bill of information is not a matter for federal habeas relief unless the indictment or information was so defective that the convicting court had no jurisdic-

tion. *E.g., Morlett v. Lynaugh,* 851 F.2d 1521, 1523 (5th Cir.1988), *cert. denied,* 489 U.S. 1086, 109 S.Ct. 1546, 103 L.Ed.2d 850 (1989). State law provides the reference point for determining the sufficiency of an indictment or information and the charging instrument can be found to be "fatally defective" only where no circumstances can exist under which a valid conviction could result under state law from the facts provable under the indictment or information. *Id.* If the question of the sufficiency of the indictment or information has been presented to the state's highest court and the petitioner's challenge has been rejected by that court, either explicitly or implicitly, then further consideration of the sufficiency of the charging instrument is foreclosed in federal habeas corpus proceedings. *Id.* ·

■■■■ It of course is true that the Sixth Amendment guarantees to the accused the right "to be informed of the nature and cause of the accusation"[1] and that this provision is applicable to the States through the Fourteenth Amendment. *E.g., Spinkellink v. Wainwright,* 578 F.2d 582, 609 n. 32 (5th Cir.1978), *cert. denied,* 440 U.S. 976, 99 S.Ct. 1548, 59 L.Ed.2d 796 (1979). Yet it is equally true, at least in the context of federal habeas corpus review,[2] that the question of whether the accused was denied the right to be informed of the charge against him does not turn exclusively upon the content of the indictment or information. That is, the accused's constitutional right to notice of

the charge brought against him can be satisfied by the availability of other means of obtaining notice of the factual or legal basis of the charge against him, such as a bill of particulars, a preliminary examination and criminal pre-trial discovery. *See Liner v. Phelps,* 731 F.2d 1201 (5th Cir. 1984).[3] Thus, if the indictment or information is sufficient to give the convicting court jurisdiction under state law and if the accused has not been denied the opportunity to obtain sufficient notice of the factual and legal basis of the charge against him through other available means, no basis for federal habeas relief flows from the alleged failure of the indictment or information to provide notice regarding the various particulars of the charge brought against the petitioner. *See id.*

In the instant case, Dowell presented his claim regarding the sufficiency of the bill of information to the Supreme Court of Louisiana and that court implicitly rejected the contention that the information was fundamentally defective when it denied relief. *See, e.g., Morlett,* 851 F.2d at 1523. As the state's highest court has considered the sufficiency of the information and has failed to find that the information was so defective as to deprive the convicting court of jurisdiction, Dowell is foreclosed from proceeding further on this ground on federal habeas review. *See, e.g., id.*

■■■■ This Court finds, further, that the state court did not deny Dowell his Sixth

1. U.S. Const. amend. VI.

2. In challenging the sufficiency of the state court indictment herein, the petitioner relies in principal part on the Ninth Circuit's habeas decision in *Kreck v. Spalding,* 721 F.2d 1229 (9th Cir.1983). To the extent that the *Kreck* decision is inconsistent with this Court's position herein, the Court declines to follow the Ninth Circuit. *Kreck* utilized the standard that applies when an objection to the sufficiency of a *federal* criminal indictment is timely raised in the district court and pursued on direct appeal. (The Fifth Circuit does not apply this same standard in federal criminal cases where the objection is raised for the first time on appeal or on collateral attack. *See, e.g., United States v. Prince,* 868 F.2d 1379, 1393–84 (5th Cir.), *cert. denied,* 493 U.S. 932, 110 S.Ct. 321, 107 L.Ed.2d 312 (1989)). The Fifth Circuit cases cited in the text do not

apply the federal standard utilized in *Kreck* in considering challenges to the sufficiency of state court indictment on federal habeas review and the Court therefore declines to follow *Kreck.*

3. In *Liner,* the habeas petitioner contended that a short form indictment charging him with first degree murder deprived him of due process because the indictment failed to specify the particular aggravating circumstance relied upon by the State. The court held that the short form indictment did not deprive the petitioner of due process because the petitioner received notice of the aggravating circumstance relied upon by the State through a bill of particulars and noted that the Supreme Court of Louisiana had found the indictment to be sufficient under state law, as notice of the aggravating circumstance "was more properly reserved to the bill of particulars."

Amendment right to be informed of the nature and basis of the charge against him. The bill of information, taken together with the preliminary examination conducted in petitioner's case, provided adequate notice of the factual and legal basis of the charge brought against him and the Court is not persuaded by the petitioner's arguments to the contrary.

Dowell complains, specifically, that the bill of information did not inform him of the type of structure entered. Yet he must concede and does concede that he was made aware of this particular fact at the preliminary examination.[4] Petitioner further complains that the bill of information did not inform him of the nature of the "theft or other felony" that the State alleged that he intended to commit upon entry into the victim's residence. However, the victim testified at the preliminary examination that the television set was unplugged, that other belongings were disturbed, and that he apparently had interrupted the intruder when he arrived at his home. Explicit notice that the State intended to prove that the petitioner had entered the residence with the intent to commit a theft therein hardly seems necessary following such testimony.

■ Furthermore, and perhaps most significantly, the petitioner has not shown that the State ever denied a defense request for explicit notice in this regard, such as through a request for a bill of particulars. A defense attorney's failure to file a request for a bill of particulars in order to determine the factual and legal basis of the claim against the accused of course may give rise to a claim of ineffective assistance of counsel. Dowell in fact has presented such a claim here and the Court addresses that claim in a later section of this Report. But a defense attorney's failure, if any, in this regard does not give rise to a viable

claim of a denial *by the State* of the accused's right to be informed of the charge made against him. There has been no showing in this case that the State ever denied a defense request to further particularize the basis of the simple burglary charge brought against Dowell and, accordingly, the petitioner's claim that he was denied his right to be informed of the nature of the charge against him must fail.[5]

*Sufficiency of the Evidence (Claim Three)*

■ Under the Supreme Court's decision in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the standard for testing the sufficiency of the evidence on federal habeas review is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. 443 U.S. at 319, 99 S.Ct. at 2789; *Knox v. Butler*, 884 F.2d 849, 851 (5th Cir.1989), *cert. denied*, 494 U.S. 1088, 110 S.Ct. 1828, 108 L.Ed.2d 957 (1990). In reviewing the sufficiency of the evidence under this standard, the federal habeas court must defer to the state court fact-finder's evaluation of the credibility of witnesses and resolution of conflicts in the evidence. *See Knox*, 884 F.2d at 851 & n. 6; *Valles v. Lynaugh*, 835 F.2d 126, 128 (5th Cir.1988); *Holloway v. McElroy*, 632 F.2d 605, 640 & n. 54 (5th Cir.1980), *cert. denied*, 451 U.S. 1028, 101 S.Ct. 3019, 69 L.Ed.2d 398 (1981). Further, the federal habeas court's consideration of the sufficiency of the evidence is limited to a review of the record evidence adduced at the petitioner's state court trial. *E.g., Knox*, 884 F.2d at 852 n. 7; *Young v. Guste*, 849 F.2d 970, 972 (5th Cir.1988). State law defines the substantive elements of the offense and a state judicial determination that the evidence was sufficient to establish the elements of the state law offense is entitled to

4. The bill of information alleged, in pertinent part, that Dowell "committed simple burglary of a structure at 684 North 39th Street." It is noteworthy that Dowell previously had lived in the rear apartment of this "unidentified" structure, which was a shotgun style duplex at 684 North 39th Street.

5. The Court further finds, to the extent that the concern is relevant here, that the petitioner was provided with sufficient notice of the charge against him, by the bill of information and otherwise, to allow him to plead double jeopardy as a bar to any future prosecution for the same offense.

great weight on federal habeas review. *E.g., Hawkins v. Lynaugh,* 844 F.2d 1132, 1134 (5th Cir.), *cert. denied,* 488 U.S. 900, 109 S.Ct. 247, 102 L.Ed.2d 236 (1988); *Porretto v. Stalder,* 834 F.2d 461, 467 (5th Cir.1987).

At petitioner's state court trial, the State sought to show that Leonard Dowell broke into a shotgun duplex that was being rented by Lucius Dillard with the intent to commit a theft therein. Dillard testified that Dowell previously had rented the back apartment of the duplex but that he had moved out after having a disagreement or difficulty with the landlord regarding the rent. After Dowell moved out, Dillard rented the entire duplex from the landlord, including both the front and back apartments. *Trial Trans.,* at 9–12, 23–27, 31–32, 40–41; *see also id.,* at 44–46.

Dillard testified that, on the evening in question, he left the duplex to go the pharmacy. When he returned, he saw that his kitchen light was on despite his recollection that he had left all of the lights off when he left. He looked through a break that he had left in some venetian blinds at the front of the house and saw a man inside in the kitchen looking toward the back of the house. As Dillard hurried to open the front door, the intruder apparently exited the house. Dillard entered the duplex, checked around the house for intruders and then began to call the police. *Trial Trans.,* at 12–16 & 32–34.

Dillard testified further that Leonard Dowell came into the house while Dillard was dialing the police. Dowell said "Hey, Bro," "Hey, Man" or "What say, Bro." Dillard told him that someone had just broken into his house and he kept dialing the police. At this point, as Dillard dialed the number for the police, Dowell twice said "Give me a break," which Dillard took to be an admission of guilt. Dillard chased Dowell out into the yard with a cane knife and then returned inside to finish calling the police. Dowell left the scene just prior to the arrival of the police. *Trial Trans.,* at 13–14, 16, 19–20 & 34–38.

Investigation revealed that the screen had been cut on a back window and that a pane had been broken out of the window. Inside the house, a television set had been detached from the cablevision line and some bottles of whiskey had been removed from a cabinet. The investigating officer found two jackets—a brown leather jacket and a field jacket—inside the duplex. Dillard testified at trial that he recognized the brown leather jacket as being a jacket frequently worn by Dowell. The field jacket had broken glass in one of the pockets and papers with Dowell's name on it in another. *Trial Trans.,* at 15–19, 27–28, 39, 52–56 & 59.

Dillard testified that later, while he was talking to the police, he saw Dowell walking down the street, with Dowell crossing over to the other side of the street as he neared the duplex. The officers arrested Dowell at this point. Dillard testified that, as Dowell came back across the street, Dowell said "Man, I wasn't going to do you nothing, man, I didn't mean you no harm, man" and "Man, all I wanted was a place to sleep." The investigating officer testified that, as Dowell was being placed in the police unit to be taken to the station, he told the police that he wanted his two jackets and asked them what they were going to do with his jackets. They told him that they would be tagged into evidence and that he would have to go to court before he could get them back. *Trial Trans.,* at 14, 21–23, 39–40 & 52–53.

Finally, Dillard testified that he later received a call from a person who he recognized to be Leonard Dowell from his past familiarity with Dowell's voice and speech patterns. According to Dillard, Dowell asked him to drop the charge against him and told him that he would "make it worth his while." *Trial Trans.,* at 28–30.

In contending that the foregoing evidence was insufficient to sustain Dowell's conviction for simple burglary, petitioner's habeas counsel proceeds on two fronts. Counsel urges, first, that Lucius Dillard's trial testimony was incredible as a matter of law because it defied physical laws and/or was so inconsistent both with itself and with the other State evidence in the record that it was incredible as a matter of

law. Counsel contends, second, that even if Dillard's testimony was credible, the State's evidence still was not sufficient to support a reasonable inference that Dowell committed each of the elements of simple burglary.

On counsel's first line of attack, this Court must conduct its review mindful of the firmly-established rule that credibility is a matter for the state court trier of fact. *See, e.g., Knox,* 884 F.2d at 851 & n. 6. This Court must defer to the state court jury's evaluation of the credibility of witnesses and its resolution of any conflicts in the evidence. *Id.* In the instant case, Dowell has failed to establish that the state court jury's resolution of the credibility question and of any conflicts in the evidence are not entitled to such deference in this Court. Many of the alleged inconsistencies alluded to by counsel are based upon a reading of the record that is perhaps permissible but which is by no means compelled. The remaining inconsistencies in no way render Dillard's testimony incredible as a matter of law.

In this vein, counsel urges, first, that Dillard's testimony that he could see the intruder from the front of the house was incredible because it allegedly defied physical laws. Counsel suggests that Dillard's testimony established that he was looking through the front door when he saw the intruder in the kitchen. Counsel contends that Dillard's testimony is irreconcilable with the investigating officer's testimony, which, according to counsel, establishes that it was impossible to see into the kitchen from the front door. However, the testimony of the two witnesses was not irreconcilably in conflict because the precise areas to which they were referring in their testimony is not entirely clear. Dillard testified that he saw the intruder "about halfway in the kitchen" and the investigating officer testified that one could see "up to the kitchen door" from the front door but that one could not see "the *complete* kitch-

en." *Trial Trans.,* at 33 & 62 (emphasis added). An intruder quite easily could have been "about halfway in the kitchen" and still be within the area of visibility described by the investigating officer. Moreover, the state court jury could have justifiably concluded that the resident of the house would be more familiar with what could be seen through the venetian blinds on the front door than would an investigating officer who was at the scene only one time and who was testifying long after the fact.[6] Again, the resolution of such potential conflicts in the evidence is a matter for the state court trier of fact, not for this Court. *Knox, supra.*

Counsel further argues that Dillard's testimony was incredible as a matter of law because his testimony allegedly was internally inconsistent as to whether Dowell ran when the police came and was inconsistent with the investigating officer's testimony that he did not see Dowell run off. Dillard's testimony on this point is not necessarily inconsistent internally and is reconcilable with the testimony of the investigating officer. In the first instance, the witness' testimony on this particular issue is somewhat muddled, particularly on cross-examination, due to Dillard's apparent difficulty in immediately understanding the time frame being referred to by counsel. Thus, although certain statements, when read in isolation, appear inconsistent with other statements made by Dillard, any such inconsistency appears to be the result of Dillard's confusion with respect to the question and not with respect to the relevant facts. When the relevant portions of the trial transcript are read *in their entirety,* as they must be read, it is clear that Dillard testified that Dowell broke and ran before the police arrived, when they were about fifty feet away. *See Trial Trans.,* at 14, 20 & 35–38. This testimony is entirely reconcilable with the officer's testimony that he did not see Dowell when the officers arrived, as it certainly is not improba-

---

6. *Cf. Trial Trans.,* at 61–63 (testimony of officer) ("Just one kitchen ... that I can remember." "I didn't know they had another second kitchen, if they did I didn't see it." "I don't know that either, I can remember a little hallway or foyer or whatever from the living room to the kitchen. I know there was a washing machine in the hallway and may have been possibly a small bedroom to the right ... best I can remember. I can't give you a blue, uh....").

ble that the officers might not see Dowell if he ran off before they reached the house.

Counsel similarly argues that it was illogical for Dillard to tell the police that he thought Dowell was in the house when he had already searched the house himself and had seen Dowell run off before the police arrived. However, the investigating officer testified that Dillard said, upon their arrival, that "He just went that way" and that he was pointing to the rear of the building. The officers went to the rear of the building, where there was a six foot fence and a graveyard behind the building, but saw nobody. They speculated that the offender had gone over the fence and then searched the house for other subjects. *Trial Trans.*, at 51–52. Taking Dillard's testimony at face value in this context, it would not have been entirely unreasonable for Dillard to recall that it was possible for Dowell to have reentered the house from the rear after he ran off in that direction. To the extent that Dillard's recollection varies slightly with that of the investigating officer regarding the specific reason for searching the house, this sort of inconsistency on this collateral point is an ordinary and natural consequence of the vagaries in the recollection of several persons who witness and then later testify regarding the same event. It does not at all establish insufficiency of the evidence, and is a matter for the jury to resolve in sifting through and weighing the evidence.

The remaining points raised by counsel require little discussion. Counsel urges that it was illogical for Dillard to not recognize Dowell when he looked through the front of the house, in light of the fact that Dowell had also lived in the duplex for some period of time. However, Dillard also testified that he had poor vision and it is not in any event inconceivable as a mat-

ter of law that he would not have immediately recognized Dowell under the circumstances presented. *See Trial Trans.*, at 33. Counsel further urges that Dillard's testimony that Dowell said "Man, all I wanted was a place to sleep" is incredible because such a statement would have been noted by the investigating officer. This conclusion is by no means compelled as a matter of law, however. And, finally, counsel points to alleged inconsistencies between the testimony of Dillard, his landlord and the investigating officer regarding which doors were damaged and to what extent. To the extent, if any, that the testimony in fact is inconsistent, however, the inconsistency in recollection on this collateral point is not of sufficient substance to overturn the conviction under *Jackson* but was, instead, a matter for the jury to weigh and consider in its review of the evidence.

In counsel's second line of attack on the sufficiency of the evidence, he contends that the testimony presented, even if credible, was insufficient to sustain Dowell's conviction because the evidence did not support a reasonable inference that Dowell committed the offense of simple burglary. Counsel maintains that the jury could not rationally infer that "Give me a break" was a confession of guilt because it could "just as likely" have been an expression of surprise that someone had broken into Dillard's house and because there was no need to plead for mercy as Dillard had not identified him as the intruder. However, the statement in question also "just as likely" could have been an expression of guilt and a plea for mercy, particularly as Dillard's coats were still in the house, making it likely that the evidence would point to him if the police came and investigated the matter in response to Dillard's call.[7] On federal habeas review, this Court must consider

---

7. Counsel argues on this point that "[e]ven if it could be assumed that petitioner's coats were in the house, he could have come in under the guise of a visit and, while Dillard called the police, retrieved the coats." *Supplemental Brief*, filed June 14, 1991, at 12. This argument is somewhat circular. Counsel in essence suggests that the jury could not have rationally believed that the "Give me a break" statement was inculpatory in nature because a more clever criminal would have surreptitiously retrieved the coats rather than blurting out "Give me a break." The jury did not have to find that the petitioner was smart or clever, however, just that he was guilty. The statement, taken in context with the other testimony as to the presence of Dowell's coats inside the house, supported a justifiable inference that Dowell was confessing guilt and asking for mercy.

all evidence in the light most favorable to the prosecution and must consider all reasonable inferences to be drawn from the evidence. *E.g., Johnson v. Collins,* 964 F.2d 1527, 1531 (5th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 4, 120 L.Ed.2d 933 (1992); *Foy v. Donnelly,* 959 F.2d 1307, 1309 n. 1 (5th Cir.1992). The Court therefore must reject counsel's invitation to draw other theoretically conceivable inferences from the evidence when there are entirely reasonable inferences that can be drawn from the evidence that fully support the state court jury verdict.

Counsel further relies upon Dillard's testimony about Dowell's alleged statement that he was just looking for a place to sleep. Counsel argues that if this testimony is credible, then the testimony specifically disproves an intent to commit a theft or other felony inside Dillard's residence. Counsel's argument confuses, however, the credibility of Dillard's testimony—that Dowell made the statement—with the credibility of Dowell's statement itself. The jury could quite well believe Dillard's testimony that Dowell made the statement without at all accepting Dowell's statement that he was just looking for a place to sleep as a true statement, particularly in light of the disturbed belongings inside the dwelling.

Counsel invokes a series of cases which generally stand for the proposition that proof merely of unauthorized entry and of simple presence within a house is not sufficient evidence of simple burglary, as burglary also requires proof of an intent to commit a theft or other felony. *See State v. Ricks,* 428 So.2d 794 (La.1983) (mere presence in house not sufficient); *State v. Marcello,* 385 So.2d 244 (La.1980) (accused entered business establishment, without authority, to wash up in the restroom). Yet, here, there was proof of more than mere unauthorized presence in the house. The television set had been disconnected

from the cable service and several bottles of liquor had been moved. This evidence provided a sufficient basis for the jury to infer an intent to commit a theft inside the house.[8]

In his remaining arguments, counsel urges that the fact that Dowell returned to the scene should have been considered as circumstantial evidence of innocence, that his initial flight was explicable in light of his criminal record and Dillard's pursuit with a cane knife, and that there is no explanation for why Dowell would have admitted entry of the house in the presence of the officers. It of course should be noted that Dowell began to cross to the other side of the street as he came down the street and that the suggested inference of innocence therefore is not quite so compelling. In any event, all of these particulars pertain to competing inferences to be drawn from the evidence and the acceptance or rejection of such inferences is a matter that lay exclusively within the province of the state court jury.

The Court accordingly concludes, after considering the arguments advanced both by counsel for petitioner and by petitioner himself, in his initial *pro se* filings, that the evidence was sufficient to support his conviction for simple burglary.

*Jury Charges (Claim Four)*

The petitioner contended, without the benefit of a transcript of the jury charges, that the jury was not charged, or was charged inadequately, with respect to reasonable doubt, circumstantial evidence, the essential elements of the offense, the presumption of innocence, the defendant's right to not testify, the law of principals and the responsive verdict of attempted simple burglary. Following the appointment of counsel and the preparation of a transcript of the jury charges, petitioner's counsel briefed and argued the single issue of whether the reasonable doubt charge

---

8. Counsel postulates that "presumably" a thief would have gathered the goods that he intended to steal in one place. He argues from this premise that there is no adequate explanation why Dowell would have not moved the television set to the liquor or vice versa. However, again, the jury did not have to find that Dowell was a well-organized burglar or a clever burglar, just that he committed the offense of simple burglary, however inartfully. Moreover, in any event, the intruder was interrupted by Dillard's arrival, which quite adequately explains any failure to have the goods to be stolen grouped together in one place.

was deficient under the United States Supreme Court decision in *Cage v. Louisiana,* 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990). The Fifth Circuit has held, however, that the *Cage* decision states a "new rule" that does not apply retroactively to convictions, such as Dowell's, that became final before *Cage* was decided. *See Skelton v. Whitley,* 950 F.2d 1037, 1043–46 (5th Cir.1992), *cert. denied* — U.S. ——, 113 S.Ct. 102, 121 L.Ed.2d 61 (1992). This Court has reviewed the transcript of the jury charges in connection with the other allegations of error raised by the petitioner and finds those objections to be without merit. Accordingly, the petitioner has failed to establish a viable basis for habeas relief in this regard.

*Allegedly Unconstitutionally Suggestive Identification (Claim Five)*

In the course of his *pro se* argument regarding the sufficiency of the evidence, the petitioner claimed that the identification testimony was unreliable and hence inadmissible under cases such as *Manson v. Braithwaite,* 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977). Yet such cases concern the admissibility of identification testimony after the police have employed suggestive identification procedures. There has been no showing in this case of any suggestive identification procedure—such as holding a physical line-up where none of the subjects resembled the suspect in any respect. At bottom, Dowell's arguments merely challenge the sufficiency and reliability of Dillard's testimony without showing the presence of any suggestive official identification procedures. Dowell's reliance on cases such as *Manson* therefore is misplaced and his claim in this regard accordingly is entirely without merit.

*Habitual Offender Adjudication (Claim Six)*

Dowell contends that his adjudication and sentencing as a habitual offender should be set aside because the felony conviction used as a predicate for the habitual offender adjudication was based upon an unconstitutionally-obtained guilty plea.

Dowell attacks the guilty plea on the predicate felony on two related but nonetheless distinct grounds. He urges, first, that the evidence was not sufficient to establish that he made a voluntary, knowing and intelligent waiver of his *"Boykin"* [9] rights in connection with his guilty plea to the predicate felony. He contends, further, that any waiver of his rights in connection with the plea was in any event invalid because he was advised that he could be found guilty by the concurrence of only five of six jurors, contrary to the holding of *Burch v. Louisiana,* 441 U.S. 130, 99 S.Ct. 1623, 60 L.Ed.2d 96 (1979).

*Sufficiency of Proof of Adequate Boykin Waivers*

The facts pertinent to the first aspect of Dowell's claim are as follows. At the habitual offender hearing held in his case on July 17, 1981, the State established that, on October 7, 1977, Dowell had been convicted of felony theft in the Fifteenth Judicial District Court in Lafayette, Louisiana. Toward this end, the State introduced, without defense objection, certified copies of the bill of information, the minutes of court reflecting Dowell's plea, and the "Plea of Guilty" form that had been signed by the petitioner and his defense counsel at the time. Dowell's defense counsel at the habitual offender hearing stipulated that Dowell was the person who had plead guilty to the charge and who had signed the guilty plea form and, on this basis, the State's fingerprint expert was excused without testifying. *Habitual Offender Hearing Transcript,* at 3–6.

The minute entry from the 1977 plea proceedings, in pertinent part, reflected the following:

The accused was ... sworn by the Clerk and interrogated by the Court as to the free and voluntariness of the guilty plea, as to the maximum possible sentence he could receive, and as to all of his constitutional rights. The Court stated that it was satisfied of the factual basis of the charge. The accused then signed the guilty plea, in open Court (in the pres-

9. *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).

ence of his attorney) and it was filed into the record.

The signed guilty plea form acknowledged, *inter alia,* that Dowell had "been informed of and [did] understand," *inter alia,* his three *Boykin* rights, *i.e.,* his privilege against compulsory self-incrimination, his right to a trial by jury, and his right to confront his accusers.[10] The form further stated, explicitly: "I realize that by pleading guilty I stand convicted of the crime charged and waive my privilege against self-incrimination, my right to jury trial, my right to confront and cross-examine witnesses, and my right of compulsory process."

Defense counsel called Dowell to the stand at the habitual offender hearing. In his testimony, the petitioner and his counsel pursued only one defense to the habitual offender charge. Dowell contended that the guilty plea on the 1977 predicate felony was invalid because he was not advised during the 1977 plea colloquy that he might later be subjected to a habitual offender charge if he were subsequently convicted of another crime. In the course of his testimony, Dowell himself acknowledged that he had signed the guilty plea form, that he had read the form before signing it, and that he was informed of the fact that he was waiving his right to trial. *Habitual Offender Hearing Transcript,* at 7–10.

Subsequently, in applications for post-conviction relief filed in the Fifteenth and the Nineteenth Judicial District Courts in or about 1986,[11] Dowell contended, for the first time, that the guilty plea on the 1977 predicate felony was invalid for lack of an affirmative showing that he had knowingly and voluntarily waived his *Boykin* rights. The state courts denied relief, implicitly finding that the petitioner had knowingly and voluntarily waived his *Boykin* rights in the 1977 plea proceedings. In denying relief, the state courts noted that the guilty

plea form signed by Dowell acknowledged the waiver of rights and that the court minutes also reflected that Dowell had been advised of his rights.

At the federal evidentiary hearing held in this matter, Dowell testified that he did plead guilty in 1977 to the predicate felony and acknowledged signing the guilty plea form. He testified, however, .that neither the state court judge nor his attorney explained his *Boykin* rights to him and that he was not himself aware of these rights at that time. As for Dowell's defense counsel at the habitual offender proceeding, it was stipulated between the parties in this proceeding that he had no recollection of the events in question.

■ Dowell's federal habeas counsel contends that the State failed to carry its burden of proving that Dowell's 1977 guilty plea and accompanying waivers were knowingly, voluntarily and intelligently made. Yet the law is quite clear that it is the *petitioner* who is charged with the burden of proving in a federal habeas proceeding that his guilty plea on a predicate felony was not intelligently and voluntarily made because he was not advised of his rights as required by *Boykin. E.g., Walker v. Maggio,* 738 F.2d 714, 716–717 (5th Cir.1984), *cert. denied,* 469 U.S. 1112, 105 S.Ct. 793, 83 L.Ed.2d 786 (1985). Moreover, although the ultimate question of voluntariness may be a mixed question of law and fact subject to *de novo* federal review, it nonetheless remains true that a state court finding on the underlying historical fact question of whether the petitioner in fact was *"Boykinized"* is entitled to a statutory presumption of correctness under 28 U.S.C. § 2254(d). *Id.*

In the instant case, the state courts' implicit finding that Dowell was advised of his *Boykin* rights may well be entitled to a presumption of correctness in these federal habeas proceedings even though the state

---

**10.** *See Boykin,* 395 U.S. at 243, 89 S.Ct. at 1712, 23 L.Ed.2d at 279.

**11.** Petitioner's counsel has supplied the Court with a copy of a ruling from the Fifteenth Judicial District, dated June 13, 1986, that rejects Dowell's challenge to the 1977 conviction

based upon allegedly inadequate *Boykinization.* The state court record in this matter contains a petition filed in the Nineteenth Judicial District on or about June 26, 1986 in which this claim also was considered and rejected by the state courts.

courts did not hold a live evidentiary hearing on the issue. Under *Sumner v. Mata*, 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981), a live state court evidentiary hearing is not always required in order for state court factual findings to be accorded a presumption of correctness. *See May v. Collins*, 955 F.2d 299, 309–313 (5th Cir.), cert. denied, —— U.S. ——, 112 S.Ct. 1925, 118 L.Ed.2d 2533 (1992). Under this Circuit's precedents, the implicit finding of the Fifteenth Judicial District Court on this point may well be subject to a presumption of correctness due to the fact that the state court judge who made the implicit finding was the same judge who presided over the 1977 plea proceedings. *Cf. May*, 955 F.2d at 314 (a state court factual finding based upon the state court's resolution of the conflicts in competing affidavits was entitled to a presumption of correctness where the state court judge who considered the affidavits was the same judge who had presided over the state court trial). This Court will assume, *arguendo*, in the present case, however, that the lack of a live state court evidentiary hearing on this particular issue precludes any reliance on the statutory presumption of correctness on this point, although this assumption is not necessarily foreordained by the Fifth Circuit's precedents. *See May*, 955 F.2d at 309–313 (discussion of *Sumner v. Mata* and following cases).

▇ Following this Court's *de novo* review of the record, including the testimony adduced at the live evidentiary hearing conducted in this matter, the Court concludes that the petitioner has failed to carry his burden of demonstrating that he was not advised of his *Boykin* rights at the time of his 1977 guilty plea. In this case, the combination of the guilty plea form, the minute entry, and Dowell's own state court testimony establishes to this Court's satisfaction that Dowell was advised of his *Boykin* rights at the time of his 1977 guilty plea. The guilty plea form specifically and expressly set forth the rights in question. By signing the guilty plea form, Dowell

specifically acknowledged that he had been informed of these rights, that he understood these rights, and that he realized that he was waiving these rights by pleading guilty. Dowell himself testified that he had read the guilty plea form prior to signing it. *Habitual Offender Hearing Transcript*, at 7.[12] The strong inference that Dowell therefore was advised of his *Boykin* rights prior to his plea is corroborated by the notations in the minute entry that Dowell was advised of "all of his constitutional rights" and, further, that the guilty plea form in fact was signed by Dowell in open court. This minute entry is entitled to a strong presumption of regularity on this point. *See Walker*, 738 F.2d at 717.

Furthermore, this Court does not find Dowell's testimony in this Court that he was not advised of his *Boykin* rights to be credible. In the first instance, Dowell's testimony that he was not advised of these rights is not entirely consistent with his testimony at the habitual offender hearing in 1981 that he read the form prior to signing it in 1977. Moreover, Dowell's testimony on this point at the federal evidentiary hearing in this matter strains credulity. Dowell testified, on the one hand, that, notwithstanding his signature on the guilty plea form, he was not advised of the rights set forth on that form. He then testified, on the other hand, that he plead guilty to the 1977 offense in reliance on a statement on that form—a statement made in the course of advising him of his right to a trial by jury—that he could be convicted by the vote of only five of six jurors. Dowell seeks, in essence to have it both ways, asking this Court to find and believe that he was not informed of what was correctly stated on the guilty plea form but that he understood and relied upon what was incorrectly stated on the form.

The Court does not so find and instead finds that Dowell has failed to carry his burden of proving that he was not advised of his *Boykin* rights at the 1977 plea hearing. This finding is fatal to his claim that

---

12. The Court accordingly does not reach habeas counsel's argument that the statement by Dowell's state court counsel—to the effect that Dowell had read the form—should not be binding on Dowell. The Court is relying on Dowell's own statements on this issue.

his 1977 plea was not knowing, voluntary and intelligent for lack of adequate *Boykinization*. *Accord Walker*, 738 F.2d at 716–18 (the state post-conviction court properly could rely upon the state trial judge's testimony regarding his routine practice and the state court minute entry in preference to the petitioner's self-serving and otherwise unsupported testimony on the *Boykin* issue).

### Error Under Burch v. Louisiana

Counsel next contends that the petitioner's habitual offender adjudication was not knowing, voluntary and intelligent because the 1977 guilty plea form advised Dowell that if he proceeded to trial he could be convicted by a vote of guilty by only five of six jurors.[13] This advice later was proved to be erroneous by the Supreme Court's decision in *Burch v. Louisiana*, 441 U.S. 130, 99 S.Ct. 1623, 60 L.Ed.2d 96 (1979). In *Burch*, the Supreme Court held that the constitutional guarantee of the right to a jury trial prohibits an accused from being validly convicted upon a vote of guilty by only five of six jurors on a six-person jury. Counsel contends here that *Burch* applies retroactively in this proceeding and that Dowell's 1977 guilty plea therefore was not validly entered because he did not make a knowing, intelligent and voluntary waiver of his right to a jury trial due to the erroneous advice that only five guilty votes were necessary for a valid conviction.[14]

Counsel relies upon the Supreme Court's decision in *Brown v. Louisiana*, 447 U.S. 323, 100 S.Ct. 2214, 65 L.Ed.2d 159 (1980), as support for the proposition that *Burch*

should apply retroactively in this federal habeas action. In *Brown*, a splintered Supreme Court applied the *Burch* rule retroactively in a case that came to the high court on direct review rather than on collateral attack. Significantly, however, only four of the nine justices in *Brown* were of the view that *Burch* should apply retroactively to cases arising on collateral attack as well as to cases arising on direct review. Of the remaining five justices, two justices concurred in the judgment and concluded that *Burch* should apply retroactively to the case only because the case had been pending on direct review at the time that *Burch* was decided. Three justices dissented and were of the view that *Burch* should not have any retroactive application at all, regardless of whether the case arose on direct review or on collateral attack. *See, e.g., Blackburn v. Thomas*, 450 U.S. 953, 955, 101 S.Ct. 1413, 1414, 67 L.Ed.2d 380 (1981) (Powell, J., with two additional justices, dissenting from denial of certiorari); *Thomas v. Blackburn*, 623 F.2d 383, 384 (5th Cir.1980), *cert. denied,* 450 U.S. 953, 101 S.Ct. 1413, 67 L.Ed.2d 380 (1981). Thus, although *Brown* quite clearly requires retroactive application of *Burch* to cases that were pending on direct review at the time that *Burch* was decided, only four justices appeared to be of the view that *Burch* also should apply retroactively to convictions, such as Dowell's 1977 guilty plea, that had become final (*i.e.*, were not pending on or subject to further direct review)[15] at the time that *Burch* was decided.[16]

---

**13.** The plea form provided, in pertinent part: "I ... have been informed and understand the charge to which I am pleading guilty, as well as the following rights: ... 2. My right to have a trial by a jury of __6__ jurors; __5__ of whom must agree as to my guilt in order to convict."

**14.** This Court previously has found that the *Burch* claim was exhausted in the state courts, based upon Dowell's allegation, on the third page of his memorandum supporting his June 26, 1986 application for state post-conviction relief, that "the waiver of rights form in this case is defective [because] while it provide[s] that petitioner has a right to a trial by jury it states an unconstitutional jury panel." It appears that this claim also was explicitly raised and considered in the Fifteenth Judicial District

Court, but this Court has not found any indication in the record before this Court that Dowell pursued his state court remedies in the Fifteenth Judicial District Court action through to the Supreme Court of Louisiana. The Court therefore has not based its finding of exhaustion on the Fifteenth Judicial District action.

**15.** *See, e.g., Allen v. Hardy,* 478 U.S. 255, 257–58 & n. 1, 106 S.Ct. 2878, 2879–80 & n. 1, 92 L.Ed.2d 199 (1986).

**16.** The Supreme Court of course was not called upon to decide this issue in any definitive manner, however, as the *Burch* case came to the Court on direct review and it therefore was not necessary for the Court to determine whether or

It nonetheless appears that this Court is constrained by the relevant Fifth Circuit authority to accept the petitioner's contention that the *Burch* decision should apply retroactively to his 1977 conviction. The principal case in this regard is the Fifth Circuit decision in *Thomas v. Blackburn*, 623 F.2d 383, 384 (5th Cir.1980), *cert. denied*, 450 U.S. 953, 101 S.Ct. 1413, 67 L.Ed.2d 380 (1981). In *Thomas*, the Fifth Circuit addressed the question of whether the closely-related decision of the United States Supreme Court in *Ballew v. Georgia*, 435 U.S. 223, 98 S.Ct. 1029, 55 L.Ed.2d 234 (1978), should be applied retroactively to a conviction that was not pending on direct review at the time that the *Ballew* decision was announced. In *Ballew*, the Supreme Court held that conducting a criminal trial before a jury consisting of only five members deprived an accused of his constitutional right to a jury trial. The *Thomas* panel held, in an opinion authored by Judge Rubin, that *Ballew* did apply retroactively to cases that were not pending on direct review at the time the *Ballew* was decided. In so holding, the *Thomas* panel adopted a rationale which appears to compel a similar result with respect to the retroactive application of *Burch* in the Fifth Circuit.

In *Thomas*, Judge Rubin's opinion canvassed the various opinions in *Brown*, specifically noting that the two concurring justices in *Brown* had based their decision on the fact that Brown's case had been pending on direct review at the time that *Burch* was decided. Judge Rubin noted, further, that Thomas' case had become final before *Burch* was decided and that the case therefore did not fall within the reach of the concurring opinion in *Brown*. See 623 F.2d at 384. The *Thomas* panel concluded that the *Brown* decision nonetheless "constrained" the panel to find that *Ballew* was retroactive in this context as well, with the panel relying on the rationale of the four-justice *plurality* opinion in *Brown*. The panel proceeded from the principle that "[w]here the major purpose of new constitutional doctrine is to overcome an aspect of the criminal trial that substantially impairs its truth-finding function and so raises serious questions about the accuracy of guilty verdicts in past trials, the new rule has been given complete retroactive effect."[17] The *Thomas* court concluded that the purpose of the *Ballew* decision was to overcome just such an aspect of the criminal trial. In reaching this conclusion, the panel relied directly on statements from the *Brown* plurality opinion to the effect that the holdings regarding jury size (in *Ballew*) and juror unanimity (in *Burch*) were based upon a concern with the reliability, accuracy and integrity of the truth-determining process itself. *See Brown*, 447 U.S. at 332–334, 100 S.Ct. at 2221–23, *quoted with approval in Thomas*, 623 F.2d at 385.[18] The *Thomas* court accordingly found *Ballew* to be retroactive even in cases that had become final prior to the decision in *Ballew*.

Whether the *Thomas* panel proceeded on a sound jurisprudential basis when it used the rationale of the four-justice plurality opinion in *Brown* to reach a result that had not gained the support of the other five justices in *Brown* may be subject to question. The propriety of the *Thomas* panel's reading and use of *Brown* would appear to

not *Burch* should be applied retroactively to convictions that were final at the time that *Burch* was decided.

**17.** *Thomas*, 623 F.2d at 385, *quoting Brown*, 447 U.S. at 328, 100 S.Ct. at 2219, *quoting Williams v. United States*, 401 U.S. 646, 653, 91 S.Ct. 1148, 1152, 28 L.Ed.2d 388 (1971) (plurality). This premise was drawn from what were only plurality opinions in *Brown* and *Williams*, but the premise appears to be well-supported by prior Supreme Court cases. *See, e.g., Williams*, 401 U.S. at 653 n. 6, 91 S.Ct. at 1152 n. 6 (collecting cases); *Linkletter v. United States*, 381 U.S. 618, 639, 85 S.Ct. 1731, 1743, 14 L.Ed.2d 601 (1965).

Indeed, the three dissenting justices in *Brown* had no quarrel with this basic premise but, instead, differed with the plurality's application of this principle to the question of whether the *Burch* rule should apply retroactively. *See Brown*, 447 U.S. at 337–38, 100 S.Ct. at 2225 (Rehnquist, J., dissenting).

**18.** Again, the *Thomas* court relied on these statements from the *Brown* plurality notwithstanding the fact that a majority of the Supreme Court apparently had not agreed with those statements.

be a matter for the Fifth Circuit and the Supreme Court, however, and not for this Court. As the matter stands now, the Fifth Circuit has held that *Ballew* is retroactive, even in cases that were final when *Ballew* was decided, because *Ballew,* like *Burch,* concerns "an aspect of the criminal trial that substantially impairs its truth-finding function and so raises serious questions about the accuracy of guilty verdicts in past trials." *Thomas,* 623 F.2d at 385. It therefore would appear that this Court is constrained, under the rationale of *Thomas,* to hold that *Burch,* like *Ballew,* applies retroactively to cases that were final on the date the decision was decided because *Burch,* like *Ballew,* pertains to "an aspect of the criminal trial that substantially impairs its truth-finding function and so raises serious questions about the accuracy of guilty verdicts in past trials." *See Thomas,* 623 F.2d at 385.[19]

To be sure, there have been significant developments in the area of retroactive application of criminal justice decisions since the time of the *Thomas* panel decision. Since the time of *Thomas,* the Supreme Court has moved steadily toward adopting Justice Harlan's view that new rules of constitutional procedure should apply retroactively in cases that were pending on direct review at the time that the new rule was announced but that such new rules generally should *not* apply on collateral review to cases that became final before the new rule was announced. *See Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989).[20]

Yet, even under the more recent decisions, such as *Teague,* a new rule of constitutional law will be applied retroactively to cases that already had become final at the time that the new rule was announced if the new rule constitutes a "bedrock procedural element" that "implicate[s] the fundamental fairness of the trial." *Teague,* 489 U.S. at 311–15, 109 S.Ct. at 1075–77 (plurality opinion).[21] The precise contours of this exception to the general rule of nonretroactivity under *Teague* are still being worked out. It would appear, however, that this exception is not different in substance from the principle applied by the Fifth Circuit in *Thomas,* as the *Teague* exception also concerns procedures "central to an accurate determination of innocence or guilt," the absence of which would "seriously diminish the likelihood of obtaining an accurate conviction." 489 U.S. at 315, 109 S.Ct. at 1077. And, regardless of whether or not the decision in *Thomas* in fact is "constrained" by *Brown,* the *Thomas* decision does establish within this Circuit that the procedural rules involved in *Burch* and *Ballew* concern "an aspect of the criminal trial that substantially impairs its truth-finding function and so raises serious questions about the accuracy of guilty verdicts in past trials." *Thomas,* 623 F.2d at 385. In light of the rationale and hold-

19. *See also id.,* at 385 ("the purpose of *Ballew* [is] indistinguishable from the purpose of *Burch, so that both must be given retroactive application if either is*") ("The recognition that *Ballew* and *Burch* share the same purpose mandates that *Ballew* also be applied retroactively....") (emphasis added).

20. *Teague* also is a fractured opinion without a clear majority. However, a majority of six justices were in agreement that the Supreme Court should adopt Justice Harlan's approach; they just differed with respect to the exact contours of the exceptions to the general rule of nonretroactivity in habeas corpus cases. *See* 489 U.S. at 299–310, 109 S.Ct. at 1069–75 (O'Connor, J., writing for a four-justice plurality); 489 U.S. at 318–21, 109 S.Ct. at 1079–80 (Stevens, J., concurring in part and concurring in the judgment, with one other justice). Justice White also apparently "threw in the towel" on the issue and noted that he would not continue to object to

the Court's developing acceptance of the Harlan retroactivity doctrine. *See* 489 U.S. at 316–17, 109 S.Ct. at 1078–79 (White, J., concurring in the judgment). The Fifth Circuit took up the matter *en banc* and decided to follow the plurality opinion in *Teague* "pending further direction from the Supreme Court." *Sawyer v. Butler,* 881 F.2d 1273, 1292 (5th Cir.1989), *aff'd sub. nom., Sawyer v. Smith,* 497 U.S. 227, 110 S.Ct. 2822, 111 L.Ed.2d 193 (1990). It would appear that, subsequently, a clear and unequivocal majority in support of the *Teague*/Harlan approach was forged on the Supreme Court at least as early as the majority opinion in *Butler v. McKellar,* 494 U.S. 407, 110 S.Ct. 1212, 108 L.Ed.2d 347 (1990). *See Skelton,* 950 F.2d at 1044.

21. *See also Skelton v. Whitley,* 950 F.2d at 1044–45 (discussion of the scope of the exception as applied to a *Cage* claim).

ing of *Thomas,* and in the absence of any further guidance from the Fifth Circuit or the Supreme Court on the point in question, this Court must conclude that *Burch* applies retroactively even where the conviction became final prior to the time that *Burch* was decided.

The Fifteenth Judicial District Court rejected Dowell's *Burch* claim on the ground that, under *Brown, Burch* applies retroactively to invalidate a conviction only where the accused was in fact convicted, following a trial, by a vote of only five of six jurors. However, the statement from the *Brown* plurality opinion upon which the state court relied was taken wholly out of context; the *Brown* Court did not at all address the effect of *Burch* on the validity of jury trial waivers where the accused was erroneously advised, prior to *Burch,* that he could be convicted by a vote of only five of six jurors. In any event, any argument that *Burch* should not apply retroactively in this context to invalidate a jury trial waiver would appear to be foreclosed by the Fifth Circuit's decision in *Smith v. Blackburn,* 632 F.2d 1194 (5th Cir.1980). In *Smith,* the Fifth Circuit held that the petitioner did not validly waive his right to a jury trial when he elected to be tried by a five-member jury rather than a six-member jury as the petitioner "was forced to choose between what were to become two unconstitutional choices: a five-member jury, held unconstitutional in *Ballew,* or a six-member jury where the concurrence of five members could support a conviction, also held unconstitutional in *Burch....*" 632 F.2d at 1195. Noting that the "dispositive issue" of retroactivity had been recently decided in the *Thomas* case, the Fifth Circuit reversed the district court's denial of habeas relief and directed that the writ issue. *Id.* In the instant case, it would

appear that Dowell did not validly waive a known right or privilege when he waived his right to a jury trial because he was presented with the unconstitutional choice of proceeding to a trial where he could be convicted on the concurrence of only five jurors. As a valid waiver of the right to a jury trial is a necessary predicate to a valid guilty plea under *Boykin,*[22] Dowell's 1977 guilty plea therefore did not provide a valid basis for a habitual offender adjudication.[23]

In light of the foregoing, it appears that this Court must apply *Burch* retroactively and must find that Dowell did not validly waive his right to a jury trial at the 1977 plea proceedings, because he was erroneously advised that he could be convicted on a vote of guilty by only five of six jurors. The 1977 conviction therefore should not have been used as a predicate felony and Dowell's adjudication and sentencing as a habitual offender therefore cannot stand.

*Alleged Ineffective Assistance of Counsel (Claims 7(a)-(m))*

A habeas petitioner claiming ineffective assistance of counsel must affirmatively demonstrate: (1) that his counsel's performance was "deficient", *i.e.,* that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant under the sixth amendment; and (2) that the deficient performance prejudiced his defense, *i.e.,* that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial where the result is reliable. *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). The petitioner must make both of these showings in order to obtain habeas relief based upon an alleged ineffective assistance of counsel. *Id.* Accordingly, if the petitioner

---

**22.** *See* 395 U.S. at 243, 89 S.Ct. at 1712.

**23.** In considering the issue of the retroactivity of *Burch* to cases arising on collateral review, this Court has not overlooked the summary calendar per curiam opinion in *Atkins v. Listi,* 625 F.2d 525 (5th Cir.1980). The *Atkins* decision did in fact apply *Burch* retroactively in a federal habeas action. However, Atkins' petition for certiorari on direct review was still pending when the *Burch* decision was announced on

April 17, 1979. *See Atkins v. Louisiana,* 441 U.S. 927, 99 S.Ct. 2041, 60 L.Ed.2d 402 (1979). Atkins' conviction therefore was not "final" at the time that *Burch* was announced and his case therefore fully satisfied the opinion of the two concurring justices in *Brown.* The Fifth Circuit's *Atkins* decision therefore constituted a mere application of the holding in *Brown* rather than an extension of that holding to cases that became final prior to the *Burch* decision.

fails to carry his burden on one part of the *Strickland* test on a claim of ineffective assistance, the reviewing court need not address the other component of the test with regard to that claim. *E.g., Black v. Collins*, 962 F.2d 394, 401 (5th Cir.), *cert. denied,* — U.S. ——, 112 S.Ct. 2983, —— L.Ed.2d —— (1992).

■ To satisfy the deficiency prong of the *Strickland* standard, the petitioner must demonstrate that his counsel's representation fell below an objective standard of reasonableness as measured by prevailing professional standards. *E.g., Martin v. McCotter*, 796 F.2d 813, 816 (5th Cir.1986), *cert. denied,* 479 U.S. 1057, 107 S.Ct. 935, 93 L.Ed.2d 985 (1987). The reviewing court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional competence and that, under the circumstances, the challenged action might be considered sound trial strategy. *E.g., Bridge v. Lynaugh*, 838 F.2d 770, 773 (5th Cir.1988). The court therefore must make every effort to eliminate the distorting effects of hindsight and to evaluate the conduct from counsel's perspective at the time of trial. *Martin*, 796 F.2d at 817. Great deference is given to counsel's exercise of his professional judgment. *Bridge*, 838 F.2d at 773; *Martin*, 796 F.2d at 816.

■ To satisfy the prejudice prong of the *Strickland* test, it is not sufficient for the petitioner to show that the alleged errors had some conceivable effect on the outcome of the proceeding. *Strickland*, 466 U.S. at 693, 104 S.Ct. at 2067. Rather, the petitioner must show that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different. *Martin*, 796 F.2d at 816. The habeas petitioner need not show that his counsel's alleged errors "more likely than not" altered the outcome of the case, yet he must show a probability "sufficient to undermine confidence in the outcome." 796 F.2d at 816–17.

Dowell has raised a whole host of alleged errors and omissions by his defense counsel that he contends constitute ineffective assistance under *Strickland.* The Court will endeavor to address each of these instances of alleged ineffective assistance as briefly as possible.

■ The petitioner has failed to affirmatively demonstrate the requisite prejudice with regard to his claim that defense counsel rendered deficient performance in failing to secure his release on bail prior to trial. Petitioner claims that he was prejudiced by counsel's alleged failings in this regard because, if he had been released, he would have been able to work and earn money to retain counsel of his choice and, further, he would have been able to assist defense counsel in the preparation of a defense. These claims of prejudice are too speculative and inconcrete to rise to the level of prejudice required to satisfy the *Strickland* standard. For even taking into account Dowell's allegations regarding the alleged shortcomings of his counsel's overall performance, which are taken up and discussed below, the petitioner has not shown in any concrete manner that there is a reasonable probability that the outcome of his state court trial would have been different had he been able to hire an attorney of his own choice and to participate more actively in the preparation of his defense. As the petitioner has failed to demonstrate the requisite prejudice from the claimed error, it is not necessary for this Court to address the question of whether counsel's performance was deficient in the first instance. *E.g., Buxton v. Collins*, 925 F.2d 816, 824 (5th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 1095, 112 L.Ed.2d 1197 (1991).[24]

■ Petitioner also has failed to demonstrate prejudice from defense counsel's combined failures to object to alleged defects in the bill of information, to request a bill of particulars and to file a discovery request. Petitioner predicates his claim of prejudice on the allegation that the bill of

24. Habeas counsel's contention that prejudice should be presumed is discussed *infra,* at p. 1362.

information did not place him sufficiently on notice to allow him to prepare a defense. However, the only specifics offered in this respect is the claim that the bill did not adequately apprise the defense of the type of structure entered and the type of felony that the State alleged that Dowell intended to commit following entry. Yet both of these particulars were quite evident from even a cursory reading of the preliminary examination testimony. Accordingly, it cannot be said that there is a reasonable probability that the outcome of the state court trial would have been different if defense counsel had in fact obtained specific formal notice of these rather evident particulars. As no prejudice has been shown under *Strickland,* the Court does not consider whether defense counsel's performance in this regard was deficient in the first instance. *Buxton, supra.*

■ Dowell's *pro se* argument that defense counsel erred in failing to move to suppress the jackets on the ground that the jackets were illegally tampered with by Dillard is without merit. Dowell bases this claim on his uncorroborated allegation that he left the jackets on Dillard's porch when Dillard chased after him with a knife and that Dillard then moved the jackets inside before the police arrived. Even if defense counsel had moved to suppress the physical evidence based upon testimony from petitioner to this effect, the motion would have been denied because a jury question would exist on this issue. Dowell therefore has failed to establish that his counsel's performance was deficient in this regard.

■ The Court further finds the petitioner's *pro se* argument that defense counsel should have moved to suppress Dowell's statement that he was looking for a place to sleep similarly to be without merit. Habeas counsel contends, in addition, that defense counsel failed to raise the correct argument in support of his objection to the introduction of Dillard's testimony regarding the phone call made by Dowell to Dillard subsequent to the offense. Habeas counsel concedes that defense counsel's tri-

al objection—that the evidence was irrelevant for lack of sufficient proof of the caller's identity—was not well founded, as Dillard testified that he knew Dowell's voice and recognized that voice on the phone. He urges, however, that the proper objection would have been that the evidence was irrelevant even if it were assumed that Dowell in fact made the call. Yet habeas counsel's claim of resulting prejudice tells the tale of the phone call's relevancy, as counsel maintains that the testimony was prejudicial because the jurors might "misconstrue" Dowell's statements as an admission of guilt and an implicit offer to pay off Dillard. The question of whether Dowell's statements properly could be construed in this manner quite clearly was one for the jury and a relevancy objection based on this argument therefore would have been without merit. Defense counsel did not render deficient performance by failing to raise a meritless relevancy argument and this claim of attorney error therefore must fail.[25]

■ Dowell has failed to affirmatively demonstrate the requisite prejudice on his claims that defense counsel rendered ineffective assistance in failing to meet with Dowell and investigate and prepare for trial, failing to investigate the crime scene, failing to subpoena and call Willie Jones as a witness, and failing to introduce the testimony and other evidence in support of Dowell's claim that it was attorney Ray Simmons, and not Dowell, that called Dillard to request that Dillard drop the charges. With respect to investigation of the crime scene, Dowell maintains that defense counsel's investigation would have revealed that it was impossible for Dillard to have seen someone in the kitchen from the front of the house. However, the evidence introduced at the evidentiary hearing held in this matter tended to show only that it was not possible to *identify* someone in the kitchen looking through the venetian blinds in the front window but that it *was* possible for someone to see a figure in the kitchen looking through the venetian blinds in the

---

**25.** The Court also finds counsel's argument that the statements either constituted or allowed the

introduction of inadmissible other crimes evidence to be without merit.

glass portion of the front door. Such evidence does not at all establish that Dillard's testimony—that he saw an unidentified individual in the kitchen while looking from the front of the house—was physically impossible and therefore unbelievable. The petitioner therefore has failed to affirmatively demonstrate prejudice in this regard.

 With regard to the failure to call Willie Jones, the Court has reviewed the transcript of Mr. Jones' testimony at the state court post-conviction hearing and concludes, based upon that testimony, that there is not a reasonable probability that the outcome of the trial would have been different had defense counsel called Mr. Jones. Based upon the showing made at the state court postconviction hearing, the direct inculpatory impact of Mr. Jones' testimony would have far outweighed any indirect exculpatory effect that the defense might have attempted to draw from the relatively minor inconsistencies between Dillard's testimony and that of Mr. Jones. Significantly, Jones testified that the jackets were inside the house prior to the time that Dillard came along after the burglary (which contradicts Dowell's present allegation that he left the jackets outside the house only after Dillard chased him with a cane knife), that Dowell made inculpatory statements and asked Dillard to not call the police, and that Dowell left the scene after seeing the police cruiser round the corner on to Dillard's street. *See April 21, 1987 Post-Conviction Hearing Transcript*, at 20–23. And, contrary to habeas counsel's assertion in his supplemental memorandum, Jones testified that it *was* possible to see part of the kitchen from Dillard's front door. Although Jones testified that it was not possible to see *his own* kitchen from *his own* front door, he testified that Dillard's house was set up differently such that the kitchen door was lined up "straight through" from the front door of Dillard's house. *Id.*, at 21 & 36.

 Any inconsistencies between Dillard's testimony at trial and Jones' testimony six-and-a-half years after the incident perhaps is explained by the dimming of Jones' memory over time. The record of the state court hearing is replete with references to the fading of his memory over time. *See April 21, 1987 Post-Conviction Hearing Transcript*, at 20, 24, 29, 31, 33, 35, 38 & 39. And the petitioner hardly carries his burden of proof in this habeas action with the unsupported speculation that Jones' testimony "may have been substantially different" if he had been timely located and called as a witness by the defense at trial. In cases, such as this one, where memories have faded but the State nonetheless has failed to establish that dismissal under Rule 9(a) of the Habeas Rules is warranted due to prejudicial delay, the burden remains with the petitioner to prove his case by a preponderance of the evidence. If the evidence available after the long passage of time following the conviction is insufficient to prove the petitioner's claim for habeas relief, then the claim necessarily must fail for lack of proof. *E.g., McDonnell v. Estelle*, 666 F.2d 246, 252 (5th Cir.1982). Here, with respect to Mr. Jones' testimony, the petitioner has failed to affirmatively demonstrate that he was prejudiced by defense counsel's failure to call Jones as a witness and this Court will not indulge in speculation as to what Jones would have been able to testify to had defense counsel contacted him prior to trial.

 There has been a similar failure of proof with regard to Dowell's claim of ineffective assistance arising from defense counsel's failure to call attorney Ray Simmons to the stand and to introduce prison telephone log books. Dowell claims that defense counsel's investigation into these matters would have revealed that it was Simmons, and not Dowell, who placed a call to Dillard subsequent to Dowell's arrest. However, it has been stipulated that if Ray Simmons were called as a witness in this matter he would testify that he has no independent recollection of Dowell's case. Further, it has been established, in response to habeas counsel's discovery request in this matter, that telephone log books do not exist that would show telephone calls (or the absence thereof) by

parish prisoners at the time in question. *See* Rec. Docs. Nos. 46 & 58. The petitioner therefore has failed to come forward with evidence affirmatively demonstrating that he was prejudiced by the alleged failure of defense counsel in this regard, as there is no evidence in the record that suggests that investigation into the matter would have lead to the introduction of evidence that in fact was favorable to the defense. This claim therefore must fail for lack of proof. *McDonnell, supra.*

In light of the foregoing, and, further, considering the arguments both of counsel and of petitioner *pro se*, the Court finds that Dowell has failed to affirmatively demonstrate that he was prejudiced by defense counsel's alleged failure to investigate and prepare for trial, either generally or in the particular respects discussed above.

The petitioner next contends that defense counsel rendered ineffective assistance by failing to impeach Dillard's trial testimony with his allegedly contradictory testimony from the preliminary examination. The Court has compared Dillard's testimony

from the preliminary examination with his trial testimony. The Court is not persuaded that trial counsel rendered constitutionally deficient performance in failing to pursue the lines of inquiry suggested by petitioner and his habeas counsel. Nor is the Court persuaded that there is a reasonable probability that the outcome of petitioner's state court trial would have been any different if trial counsel had pursued the suggested lines of inquiry.

■ The Court further concludes that the petitioner is not entitled to relief on his claim arising from defense counsel's refusal to call the petitioner to the stand at his state court trial. It is not at all disputed in this case that defense counsel did in fact refuse to allow Dowell to testify at his state court trial, despite Dowell's repeated requests that he be called to testify in his own defense.[26] And this Court so finds, as Dowell's testimony on this point was credible to this Court.[27] The only question before the Court therefore is the legal significance in this habeas proceeding of the fact that defense counsel did not allow the peti-

---

**26.** *See, e.g. Memorandum in Opposition to Petition for Writ of Habeas Corpus,* filed Feb. 28, 1991, at 14 ("Petitioner next claims that Mr. Hollingsworth's performance was deficient in that he did not allow petitioner to take the stand, despite petitioner's request to do so..... It appears that Mr. Hollingsworth did not allow petitioner to testify because he did not want petitioner's prior convictions exposed to the jury."). The Court therefore does not reach the question of whether a petitioner's uncorroborated testimony that he was not allowed to testify can be a sufficient basis for the grant of federal relief. *Cf. Underwood v. Clark,* 939 F.2d 473 (7th Cir.1991) (as a matter of policy, the court held that the uncorroborated allegation of the petitioner that his trial counsel refused to allow him to testify was not a sufficient basis for an evidentiary hearing or for the grant of federal habeas relief). In the instant case, moreover, it would appear that Dowell's testimony is somewhat corroborated by defense counsel's opening statement, which included the following remark: "As I said, I still have not determined whether or not the defendant will take the stand, that's my decision, if he does not it's not to be held against him by you...." *Supplemental Transcript Containing Opening Statements, Closing Arguments and Jury Charges,* at 13. It of course is true that these remarks by defense counsel do not necessarily compel the conclusion that counsel would in

fact override his client's wishes regarding taking the stand. Defense counsel often tell the jury a "white lie" in this regard—even when they in fact recognize and would honor the client's decision to testify—in order to deflect blame from the defendant and to lessen the chance that the jury will hold a decision not to testify against the defendant himself. *See Rault v. State of Louisiana,* 772 F.2d 117, 130 n. 21 (5th Cir. 1985), *cert. denied,* 476 U.S. 1178, 106 S.Ct. 2905, 90 L.Ed.2d 991 (1986). Yet it nonetheless remains true that counsel's opening remarks in the petitioner's case are consistent with Dowell's testimony on this point. It has been stipulated in this case that defense counsel had no independent recollection of Dowell's state court trial. The State has not sought to shoulder the burden, however, of showing that dismissal under Rule 9(a) of the Habeas Rules is warranted on the ground that this fading of counsel's memory was due to delay by the petitioner in presenting his right-to-testify claim.

**27.** The Court therefore does not reach the question of whether the state court implicitly found that defense counsel overrode the petitioner's decision in this regard, although any such implicit finding would appear to be fairly supported by the record in light of Dowell's testimony and the remarks of defense counsel in his opening statement.

tioner to testify, despite his repeated requests to do so.

On this legal question, the only proposition that is not free from doubt is that an accused has a constitutional right to testify in his own defense that cannot be unreasonably restricted by the *state*. *See Rock v. Arkansas*, 483 U.S. 44, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987) (the state's per se rule excluding hypnotically refreshed testimony infringed impermissibly on the defendant's constitutional right to testify on her own behalf).[28] Whether the refusal of *defense counsel* to call the defendant to testify gives rise to a viable claim, either independently or as an aspect of an ineffective assistance claim, and under what circumstances, is far from clear, however. The Fifth Circuit was presented with this issue on *en banc* rehearing in *Wright v. Estelle*, 572 F.2d 1071 (5th Cir.) *(en banc)*, *cert. denied*, 439 U.S. 1004, 99 S.Ct. 617, 58 L.Ed.2d 680 (1978). Yet the *en banc* court merely adhered to the panel opinion, which expressly declined to consider "whether a defendant has a fundamental right to testify in his own behalf that can only be waived by him" and which held, instead, that any error presented in the case was harmless error due to the overwhelming evidence of guilt. *Wright*, 572 F.2d at 1072, *adhering to the panel opinion*, 549 F.2d 971, 974 (5th Cir.1977). Since *Wright*, the Fifth Circuit has not been presented with a clear opportunity to reach and resolve the issue.[29] Cases from other circuits

addressing the issue have produced a wide array of viewpoints and approaches to the issue. *See, e.g., United States v. Teague*, 953 F.2d 1525 (11th Cir.1992) *(en banc)*, *cert. denied*, — U.S. —, 113 S.Ct. 127,- 121 L.Ed.2d 82 (1992) (the opinions in this case illustrate the wide range of diverging views on the issue).

What is clear against the foregoing backdrop is that this Court would be adopting a new constitutional rule of criminal procedure in this habeas case if it were to hold that Dowell's constitutional right to testify and/or his right to effective assistance of counsel were violated by his trial counsel's refusal to place him on the stand. Under *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), this Court cannot adopt or create a new constitutional rule of criminal procedure in a habeas corpus case unless the new rule would be applied to all defendants on collateral review (*i.e.*, without regard to the date of the finality of their conviction) because the rule falls within the two exceptions to nonretroactivity set forth in *Teague*. *See Teague*, 489 U.S. at 316, 109 S.Ct. at 1078.[30] The Court does not find that the proposed rule in question—that defense counsel cannot constitutionally override the defendant's decision to take the stand—fits within either of the *Teague* exceptions. This Court therefore is precluded under *Teague* from addressing or granting relief on Dowell's claim. *Id.*[31]

---

**28.** *See also United States v. Teague*, 953 F.2d 1525, 1530 (11th Cir.1992) *(en banc)*, *cert. denied*, — U.S. —, 113 S.Ct. 127, 121 L.Ed.2d 82 (1992) (the *Rock* decision "put to rest any doubt that a criminal defendant has a *constitutional* right to testify in his own defense") (emphasis in original).

**29.** *See Rault v. State of Louisiana*, 772 F.2d 117, 131 n. 25 (5th Cir.1985) (the court did not reach the issue because the state court's finding that the defendant chose *not* to testify at trial was entitled to a presumption of correctness); *United States v. Walker*, 772 F.2d 1172, 1178 n. 10 (5th Cir.1985) (noting unresolved nature of issue); *Hollenbeck v. Estelle*, 672 F.2d 451 (5th Cir.), *cert. denied*, 459 U.S. 1019, 103 S.Ct. 383, 74 L.Ed.2d 514 (1982) (no violation where defendant was informed on the record that he had a right to testify and that no one could prevent him from doing so); *United States v. Phillips*,

664 F.2d 971, 1042 (5th Cir.1981), *cert. denied sub nom. Platshorn v. United States*, 459 U.S. 906, 103 S.Ct. 208, 74 L.Ed.2d 166 (1982) (as in *Wright*, the court did not reach the issue because the error, if any, was harmless error in light of the overwhelming evidence supporting the conviction).

**30.** Although the citation in the text is to *Teague*'s plurality opinion, it would appear that the plurality opinion states what the law is in, at the very least, this Circuit. *See* note 20, *supra*.

**31.** The *Teague* issue is one that can be, but need not be, raised by the Court *sua sponte*. *See Teague*, 489 U.S. at 300, 109 S.Ct. at 1069; *Smith v. Black*, 904 F.2d 950, 981 n. 12 (5th Cir.1990), *cert. granted and judgment vacated on other grounds*, — U.S. —, 112 S.Ct. 1463, 117 L.Ed.2d 609 (1992).

Furthermore, as an alternative holding, the Court concludes that any constitutional error in this regard would be, at most, harmless error because Dowell's extensive criminal record would have been placed before the jury had he taken the stand. This record included prior convictions for robbery, armed robbery, discharge of a firearm, and theft. *Sentencing Transcript*, at 4–7.[32] Habeas counsel urges that the Supreme Court's decision in *McKaskle v. Wiggins*, 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984), necessarily undermines the *en banc* court's reliance on the harmless error doctrine in *Wright*.[33] This matter is perhaps best addressed to the Fifth Circuit, however, perhaps even on an *en banc* basis once more.[34] As the matter stands now, it is the law in this Circuit that the claim, if any, that arises in this context is subject to a harmless error analysis and this Court finds in the instant case that the error, if any, presented here was only harmless error. Relief therefore should be denied on this ground as well.

The petitioner next contends that trial counsel should have requested a charge on "anything of value" that would have established that an unauthorized entry of a dwelling to find a place to sleep could not constitute simple burglary because the requisite intent to commit a theft or other felony was not present. The Court is not persuaded either that trial counsel's performance was deficient or that Dowell was prejudiced on this account. The State's theory of the case was that Dowell broke into Dillard's house not to sleep but instead to steal and trial counsel's defense was not that Dowell was looking for a place to sleep but, instead, that he was not the perpetrator at all. Trial counsel did not render deficient performance by failing to request a charge on a defense theory that he had decided, as a matter of trial strategy, not to pursue and there is not a reasonable probability that the outcome of the trial would have been any different had the jury been charged on an issue, such as this one, that was not at all contested between the State and the defense.

Turning to the habitual offender proceeding, the Court does not find that trial counsel's performance was deficient on account of his failure to object and argue that a minute entry and a guilty plea form do not suffice under state law to establish the required *Boykin* waivers on the predicate felony. While it is true under Louisiana law that a deficient minute entry and a deficient guilty plea form do not establish valid *Boykin* waivers on the predicate felony, it is equally true that a minute entry and a guilty plea form provide sufficient proof of the *Boykin* waivers when, taken together, the minute entry and the guilty plea form adequately reflect a proper statement of the *Boykin* rights and their waiver. *Compare State v. Junegain*, 478 So.2d 542, 548 (La.App. 4th Cir.1985), *writ denied*, 483 So.2d 1018 (La.1986) (minute entry and guilty plea form sufficient) *with State v. Age*, 417 So.2d 1183, 1188–89 & 1190–92 (La.1981) (the plurality held that the guilty plea form did not properly detail the *Boykin* rights and the court therefore did not address the defendant's argument that a transcript of the plea colloquy was required). Even if defense counsel should have pressed the argument, the petitioner cannot show prejudice because it has never been established under Louisiana law that a minute entry and guilty plea form are

---

**32.** For similar reasons, counsel's basic decision or advice to not have the petitioner testify was not ineffective assistance of counsel, as it was a matter of reasonable trial strategy to not open the door and allow the prior convictions, most of which involved misappropriation of property, to be placed before the jury, even for impeachment.

**33.** In *McKaskle*, the Supreme Court declared that the right of self-representation is not amenable to a harmless error analysis. 465 U.S. at 177 n. 8, 104 S.Ct. at 950 n. 8. Counsel urges that the same considerations addressed in *McKaskle* lead to the conclusion that the right to testify similarly is not amenable to a harmless error analysis.

**34.** *See also Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir.1991) ("As a general matter, it is only the most extraordinary of trials in which a denial of the defendant's right to testify can be said to be harmless beyond a reasonable doubt."); *Wright*, 572 F.2d at 1080–82 (Godbold, J., dissenting) (harmless error doctrine should not apply).

insufficient in this regard as a matter of law. The technical points raised by habeas counsel regarding the use of a signature stamp for the state court judge's signature and the absence of initialing on each and every line on the plea form do not persuade this Court otherwise.[35]

Of course, as has been held above, the guilty plea form from the 1977 predicate felony conviction in fact was deficient because it improperly advised Dowell that he could be convicted by the vote of only five of six jurors. The cases necessary to support an objection on this ground were all on the books at the time of Dowell's habitual offender proceeding and defense counsel rendered deficient performance in failing to object on this basis. Dowell was prejudiced by the failure to object as there is a reasonable probability that the outcome of the habitual offender proceeding would have been different if counsel had raised the objection. *See also State ex rel. Becnel v. Blackburn*, 410 So.2d 1015 (La.1982) (following the Fifth Circuit's *Thomas* decision, the court held that *Ballew* applied retroactively to invalidate the predicate felonies).

With the exception of the *Burch* issue, which affects only the habitual offender proceeding, this Court does not find that defense counsel rendered deficient performance on appeal and, further, does not find that the petitioner was prejudiced under *Strickland* by defense counsel's failure to raise other issues on appeal.

The remaining instances of alleged ineffective assistance referred to by the petitioner and his habeas counsel do not warrant further discussion herein. The Court has reviewed same and finds that the petitioner has failed to affirmatively demonstrate prejudice on these claims of attorney ineffectiveness.

Finally, the Court must reject habeas counsel's suggestion that a presumption of prejudice applies here with respect to Dowell's claims of attorney ineffectiveness. Whether taken singly or in combination, the errors alleged here are not such as to warrant a presumption of prejudice. *See McInerney v. Puckett*, 919 F.2d 350, 352–53 (5th Cir.1990) ("bad lawyering, regardless of how bad, does not support the presumption; more is required").

*Alleged Excessive Sentence (Claim Eight)*

The Court will address the excessive sentence claim only in light of the possibility that the Presiding Judge or a reviewing court might disagree with the Court's conclusion that *Burch* invalidates the 1977 predicate felony used in the habitual offender proceeding. On this claim, the Court finds that the sentence imposed was not grossly disproportionate to the offense and habitual offender adjudication and that, accordingly, Dowell has failed to establish that his sentence was excessive under the Eighth Amendment. *See McGruder v. Puckett*, 954 F.2d 313 (1992), *cert. denied* — U.S. ——, 113 S.Ct. 146, 121 L.Ed.2d 98 (1992).

## RECOMMENDATION

Accordingly, it is the recommendation of the Magistrate Judge that the petitioner's application for habeas corpus relief be GRANTED IN PART and DENIED IN PART, with the petitioner's adjudication as a habitual offender being vacated and with the petitioner being released from custody unless the State acts, within a time period to be established by the Court, either to resentence the petitioner on the underlying simple burglary conviction or to retry and

---

**35.** The Court also rejects habeas counsel's suggestion that there has been no demonstration of how the State intended to prove that Dowell in fact was the person who pled guilty to the 1977 offense. The record of the habitual offender proceeding shows that the State's fingerprint expert, Ms. Sybil Guidry, was present but was released without testifying because the defense stipulated that Dowell was the person that plead guilty to the offense. *Transcript of Habitual Offender Proceedings,* at 5–6. For this reason, Dowell has failed to affirmatively demonstrate prejudice from any failure by defense counsel to inform Dowell of his right to remain silent and his right to require that the State prove the predicate felony. The State was poised to prove its case on the predicate felony even without the stipulations and concessions of the defense.

resentence him on the habitual offender charge.[36]

**36.** In establishing such a time period, the Court might wish to consider the petitioner's approaching release date, which the Court believes to be in October of 1992. The petitioner's release will not moot this case. *See Carafas v. LaVallee,* 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968). The Court has resolved all claims raised herein in light of the *en banc* decision of the Eleventh Circuit Court of Appeal in *Clisby v. Jones,* 960 F.2d 925 (11th Cir.1992), which held, under the court's supervisory power, that the district courts in that Circuit must address all claims presented in a habeas petition regardless of whether relief is granted or denied. The Court does not thereby bind itself to do so in all future habeas cases in this Court.